## WALES *v.* WHITNEY, Secretary of the Navy.

### APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued April 21, 22, 1885.— Decided May 4, 1885.

The act of March 3, 1885, Laws 2d Sess. 48th Cong. ch. 353, page 437, restored to this court appellate jurisdiction in *habeas corpus* cases over decisions of Circuit Courts of the United States and decisions of the Supreme Court of the District of Columbia.

Neither this court nor the Supreme Court of the District of Columbia has appellate jurisdiction over a Naval Court Martial, nor over offences which it has power to try.

In order to make a case for *habeas corpus* there must be actual confinement, or the present means of enforcing it : mere moral restraint is not sufficient.

The appellant, a medical director in the navy, was, under Rev. Stat. §§ 419, 420, 421, 426, 1471, appointed and commissioned chief of the Bureau of Medicine and Surgery in the Navy Department, with the title of Surgeon-General, and served as such the full term fixed by law. After he had vacated that office, a court martial was ordered to try him under charges and specifications for conduct as Chief of the Bureau and Surgeon-Gen-

eral, and the Secretary of the Navy notified him thus: "You are placed under arrest and you will confine yourself to the limits of the City of Washington." An application for a writ of *habeas corpus* having been denied by the Supreme Court of the District of Columbia; on appeal to this court it was *Held,* (1) That no restraint of liberty was shown to justify the use of the writ of *habeas corpus.* (2) That the court would not decide in these proceedings. whether the Surgeon-General of the Navy as Chief of the Bureau of Medicine and Surgery in the Navy, is liable to be tried by court martial for failure to perform his duties as Surgeon-General.

This was an appeal from a judgment of the Supreme Court of the District of Columbia, refusing a writ of *habeas corpus* to release appellant, a Medical Inspector in the Navy, from restraint under an arrest, made by order of the Secretary of the Navy. The facts which make the case are stated in the opinion of the court.

*Mr. J. M. Wilson* and *Mr. F. P. B. Sands* for appellant.

*Mr. John S. Blair* for appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from a judgment of the Supreme Court of the District of Columbia, which refused to make an order on a writ of *habeas corpus* relieving appellant from the custody of the appellee, who, it is alleged, held the appellant in restraint of his liberty unlawfully.

Upon the decision of the Supreme Court of the District, adverse to petitioner, an application for an original writ of *habeas corpus* was made to this court by counsel for appellant, but, on a suggestion from the court that an act of Congress, at its session just closed, had restored the appellate jurisdiction of this court in *habeas corpus* cases over decisions of the Circuit Courts,* and that this necessarily included jurisdiction over

---

* "An act amending section seven hundred and sixty-four of the Revised Statutes. *Be it enacted by the Senate and House of Representatives of the United States in Congress assembled,* That section seven hundred and sixty-four of the Revised Statutes be amended so that the same shall read as follows: ' From the final decision of such Circuit Court, an appeal may be taken to the Supreme Court in the cases described in the preceding section.'" Approved March 3, 1885. Laws of 2d Sess. 48th Cong. ch. 353, page 437.

similar judgments of the Supreme Court of the District of Columbia, counsel, on due consideration, withdrew their application, and, appealing from the judgment of that court, bring here the record of it for review.

Rev. Stat. Dist. Col., § 846, which makes the jurisdiction of this court over judgments and decrees of the Circuit Courts of the United States the measure of its jurisdiction (except as regards the sum in controversy) over judgments and decrees of the Supreme Court of the District in similar cases, justifies the exercise of our appellate jurisdiction in the present case.

The original petition for the writ was addressed to Mr. Justice Cox of the Supreme Court of the District, and alleged that, on the second day of March, 1885, the petitioner was arrested and imprisoned, and ever since had so remained in arrest and imprisonment and restrained of his liberty in the District of Columbia, illegally. The petition sets out an order of the Secretary of the Navy, under which this restraint is exercised, which order is in the following terms:

"WASHINGTON, *February* 28*th*, 1885.

"SIR: Transmitted herewith you will receive charges, with specifications, preferred against you by the department.

"A general court-martial has been ordered to convene in rooms numbered 32 and 33, at the Navy Department, at Washington, D. C., at 12 o'clock noon, on Monday, the 9th proximo, at which time and place you will appear and report yourself to Rear Admiral Edward Simpson, United States Navy, the presiding officer of the court, for trial. The Judge Advocate will summon such witnesses as you may require for your defence.

"You are hereby placed under arrest, and you will confine yourself to the limits of the City of Washington.

"Very respectfully,

"WM. E. CHANDLER,

*Secretary of the Navy.*

"Medical Director

"PHILIP S. WALES,

"*U. S. N., Washington, D. C.*"

It also makes an exhibit to the petition a copy of the charges and specifications accompanying this order. It is unnecessary to say more of these charges at present than that they relate to derelictions of duty on the part of the appellant while he was Surgeon-General of the Navy, and as such had charge of the Bureau of Medicine and Surgery in the Navy Department, which office he held from August 20, 1879, to January 26, 1884. He had therefore ceased to be Surgeon-General, and was in the exercise of his functions as Medical Director of the Navy when this order was served on him.

Judge Cox issued the writ directed to William C. Whitney, Secretary of the Navy, who had become such by succession to Secretary Chandler. To this writ Secretary Whitney made return, stating the action of Secretary Chandler and the history of the appellant's connection with the Navy since he was appointed Medical Inspector in June, 1873; the charges preferred against him as Chief of the Bureau of Medicine and Surgery, and the order of arrest of Secretary Chandler, and closes his return as follows:

"Your respondent respectfully submits that the said Philip S. Wales is not now, nor was at the time of issuing the annexed writ, in the custody or possession of, or confined or restrained of his liberty by, your respondent, other than as appears by the papers marked A, B, and C, attached hereto and made part of this return, and that the cause of such detention, if any there be, is fully shown in said exhibits.

"And your respondent further answers that neither he nor any one by his authority has exercised any physical restraint over the said Philip S. Wales before or since the issue of said writ.

"Your respondent further answers that by virtue of his office as Secretary of the Navy the said Philip S. Wales, being a Medical Director in the Navy, was, at the time of the issuing of the said writ, and has since continually been, in the power of your respondent so far as the statutes of the United States and the regulations of the Navy, not inconsistent therewith, have vested him with authority over the said Philip S. Wales.

"Your respondent further says that he knows of no obstacle or impediment to prevent the said Philip S. Wales from being present before your honor at the time and place fixed in the said writ; but, in order to comply with the order of your honor and under and by virtue of his authority as Secretary of the Navy, he has ordered the said Philip S. Wales to be present at the time and place so fixed. Wherefore the said William C. Whitney, Secretary of the Navy, has here, before your honorable court, the body of the said Philip S. Wales, together with the said writ, as therein he is commanded.

"W. C. WHITNEY,<br>"<i>Secretary of the Navy.</i>"

To this return the petitioner, by his counsel, demurred, when, on this demurrer and after motion of the respondent to discharge the writ, Mr. Justice Cox certified the case into the court in General Term. That court, after full hearing and due consideration, made the following order:

"*Habeas Corpus. Ex relatione* PHILIP S. WALES.—No. 15,780.

"This cause coming on for hearing, and having been argued by counsel and duly considered, it is, this 14th day of April, 1885, ordered and adjudged that the petition be dismissed with costs, the court being of opinion that the relator has not been, nor is he at this present, deprived of his personal liberty by virtue of the orders of the Secretary of the Navy set out in the petition.

"By the court:                                    A. WYLIE."

It is from this order that the present appeal is taken.

The only other matter apparent in the record necessary to be stated at this time is, that the court-martial referred to in the order of arrest was duly appointed, assembled and organized, and that appellant appeared before it, and, at his request, it has been adjourned, from time to time, to await the result of these proceedings in *habeas corpus*.

Two questions have been elaborately argued before us, namely:

1. Does the return of the Secretary of the Navy to the writ

and its accompanying exhibits show such restraint of the liberty of the petitioner by that officer, as justifies the use of the writ of *habeas corpus?*

2. If there is a restraint, which, in its character, demands the issue of the writ, are the charges for which the petitioner is required to answer before the naval court-martial of the class of which such a court has jurisdiction?

The latter is a question of importance, and not free from difficulty, since its solution requires the court to decide whether the Surgeon-General of the Navy, as Chief of the Bureau of Medicine and Surgery in the Department of the Navy, under the immediate supervision of the Secretary, is liable for any failure to perform his duties as Surgeon-General, to be tried by a military court, under the articles of war governing the Navy, or has a right for such offences to be tried alone by the civil courts, and according to the law, for offences not military. Is he, in that character, in the civil or military service of the United States? The difficulty of stating the question shows the embarrassment attending its decision.

The other question, however, has precedence, both because it is the one on which the court of the District decided the case, because, if there was no such restraint, whether legal or illegal, as to call for the use of the writ, there is no occasion to inquire into its cause.

It is obvious that petitioner is under no physical restraint. He walks the streets of Washington with no one to hinder his movements, just as he did before the Secretary's order was served on him. It is not stated as a fact in the record, but it is a fair inference, from all that is found in it, that, as Medical Director, he was residing in Washington and performing there the duties of his office. It is beyond dispute that the Secretary of the Navy had the right to direct him to reside in the city in performance of these duties. If he had been somewhere else the Secretary could have ordered him to Washington as Medical Director, and, in order to leave Washington lawfully, he would have to obtain leave of absence. He must, in such case, remain here until otherwise ordered or permitted. It is not easy to see how he is under any restraint of his personal

liberty by the order of arrest, which he was not under before. Nor can it be believed that, if this order had made no reference to a trial on charges against him before a court-martial, he would have felt any restraint whatever, though it had directed him to remain in the city until further orders. If the order had directed him so to remain, and act as a member of such court, can any one believe he would have felt himself a prisoner, entitled to the benefit of a writ of *habeas corpus?*

On the other hand, there is an obvious motive on the part of the petitioner for construing this order as making him a prisoner in the custody of the Secretary.

That motive is to have himself brought before a civil court, which, on inquiry into the cause of his imprisonment, may decide that the offence with which the Secretary charges him is not of a military character, is not one of which a naval court-martial can entertain jurisdiction, and, releasing him from the restraint of the order of arrest, it would incidentally release him from the power of that court.

But neither the Supreme Court of the District nor this court has any appellate jurisdiction over the naval court-martial, nor over offences which such a court has power to try. Neither of these courts is authorized to interfere with it in the performance of its duty, by way of a writ of prohibition or any order of that nature. The civil courts can relieve a person from imprisonment under order of such court only by writ of *habeas corpus,* and then only when it is made apparent that it proceeds without jurisdiction. If there is no restraint there is no right in the civil court to interfere. Its power *then* extends no further than to release the prisoner. It cannot remit a fine, or restore to an office, or reverse the judgment of the military court. Whatever effect the decision of the court may have on the proceedings, orders or judgments of the military court, is incidental to the order releasing the prisoner. Of course, if there is no prisoner to release, if there is no custody to be discharged, if there is no such restraint as requires relief, then the civil court has no power to interfere with the military court, or other tribunal over which it has by law no appellate jurisdiction.

The writ of *habeas corpus* is not a writ of error, though in some cases in which the court issuing it *has* appellate power over the court by whose order the petitioner is held in custody, it may be used with the writ of *certiorari* for that purpose. In such case, however, as the one before us it is not a writ of error. Its purpose is to enable the court to inquire, first, if the petitioner is restrained of his liberty. If he is not, the court can do nothing but discharge the writ. If there is such restraint, the court can then inquire into the cause of it; and if the alleged cause be unlawful it must then discharge the prisoner.

There is no very satisfactory definition to be found in the adjudged cases of the character of the restraint or imprisonment suffered by a party applying for the writ of *habeas corpus*, which is necessary to sustain the writ. This can hardly be expected from the variety of restraints for which it is used to give relief. Confinement under civil and criminal process may be so relieved. Wives restrained by husbands, children withheld from the proper parent or guardian, persons held under arbitrary custody by private individuals, as in a madhouse, as well as those under military control, may all become proper subjects of relief by the writ of *habeas corpus*. Obviously, the extent and character of the restraint which justifies the writ must vary according to the nature of the control which is asserted over the party in whose behalf the writ is prayed.

In the case of a man in the military or naval service, where he is, whether as an officer or a private, always more or less subject in his movements, by the very necessity of military rule and subordination, to the orders of his superior officer, it should be made clear that some unusual restraint upon his liberty of personal movement exists to justify the issue of the writ; otherwise every order of the superior officer directing the movements of his subordinate, which necessarily to some extent curtails his freedom of will, may be held to be a restraint of his liberty, and the party so ordered may seek relief from obedience by means of a writ of *habeas corpus*.

Something more than moral restraint is necessary to make a

case for *habeas corpus*.   There must be actual confinement or the present means of enforcing it.   The class of cases in which a sheriff or other officer, with a writ in his hands for the arrest of a person whom he is required to take into custody, to whom the person to be arrested submits without force being applied, comes under this definition.   The officer has the authority to arrest and the power to enforce it.   If the party named in the writ resists or attempts to resist, the officer can summon bystanders to his assistance, and may himself use personal violence.   Here the force is imminent and the party is in presence of it.   It is physical power which controls him, though not called into demonstrative action.

It is said in argument that such is the power exercised over the appellant under the order of the Secretary of the Navy. But this is, we think, a mistake.   If Dr. Wales had chosen to disobey this order, he had nothing to do but take the next or any subsequent train from the city and leave it.   There was no one at hand to hinder him.   And though it is said that a file of marines or some proper officer could have been sent to arrest and bring him back, this could only be done by another order of the Secretary, and would be another arrest, and a real imprisonment under another and distinct order.   Here would be a real restraint of liberty, quite different from the first.   The fear of this latter proceeding, which may or may not keep Dr. Wales within the limits of the city, is a moral restraint which concerns his own convenience, and in regard to which he exercises his own will.

The present case bears a strong analogy to *Dodge's Case* in 6 Martin, La. 569.   It appeared there that the party who sued out the writ had been committed to jail on execution for debt, and having given the usual bond by which he and his sureties were bound to pay the debt if he left the prison bounds, he was admitted to the privilege of those bounds.   The plaintiff in execution failing to pay the fees necessary to the support of the prisoner, the latter sued out a writ of *habeas corpus*.

That eminent jurist, Chief Justice Martin, said, on appeal to the Supreme Court: "It appears to us that the writ of *habeas corpus* was improperly resorted to.   The appellee was

under no physical restraint, and there was no necessity to recur to a court or judge to cause any moral restraint to cease. The sheriff did not retain him, since he had admitted him to the benefit of the bounds; the doors of the jail were not closed on him, and if he was detained it was not by the sheriff or jailer. If his was a moral restraint it could not be an illegal one. The object of the appellee was not to obtain the removal of an illegal restraint from a judge, but the declaration of the *court* that the plaintiffs in execution had by their neglect lost the right of detaining him. A judgment declaring such neglect, and pronouncing on the consequences of it, was what the appellee had in view." The judgment awarding the writ was reversed. The analogy to the case before us is striking.

A very similar case was passed upon by the Supreme Court of Pennsylvania in *Respublica* v. *Arnold*, 3 Yeates, 263. A party who had been indicted for arson, and had given bail for his appearance to answer the indictment, applied, while out under bail, to be discharged by writ of *habeas corpus*, on the ground of delay in the prosecution. The court held that the statute of Pennsylvania, which was a re-enactment of the *habeas corpus* act of 31 Charles II., ch. 2, spoke of persons *committed* or *detained*, and clearly did not apply to a person out on bail. And Mr. Justice Yeates very pertinently inquires "would not a *habeas corpus* directed to the bail of a supposed offender be perfectly novel?" And Smith J., said that the inclination of his mind was that *habeas corpus* could not lie to the bail.

In a note to the cases of *Rex* v. *Dawes* and *Rex* v. *Kessel*, 1 Burrow, 638, the same principle is stated, though by whom the note is made does not appear. Both these persons were brought before Lord Mansfield, in the King's Bench, on a rule against the commissioners to enforce an act of Parliament to increase the army. In both cases the ground on which the discharge was asked was, that they were illegally pressed into the service. Lord Mansfield discharged one because his statement was found to be correct, and refused the other because his statement was not true.

The note to the report, apparently in explanation of the fact that they were not brought before the court by writ of *habeas*

*corpus,* and that no objection was taken to the rule by the commissioner, says: "Neither of these could have brought a *habeas corpus;* neither of them was in custody. Davies had deserted and absconded, and Kessel had been made a corporal. No objection was made by the commissioner to the propriety of the method adopted." In the continuation of Chief Baron Comyns' Digest, published in 1776, and in Rose's edition of that Digest, these cases are cited as showing that the parties could not bring *habeas corpus,* because they were not in custody. Comyns' Digest, Continuation, p. 345; 4 Comyns' Dig. (4th ed. 8vo, London, 1800) 313; *Habeas Corpus B.*

While the acts of Congress concerning this writ are not decisive, perhaps, as to what is a restraint of liberty, they are evidently framed in their provisions for proceedings in such cases on the idea of the existence of some actual restraint. Rev. Stat. § 754 says the application for the writ must set forth "in whose custody he (the petitioner) is detained, and by virtue of what claim or authority, if known;" § 755, that "the writ must be directed to the person in whose custody the party is;" § 757, that this person shall certify to the court or justice before whom the writ is returnable the true cause of the detention; and by § 758 he is required "at the same time to bring the body of the party before the judge who granted the writ."

All these provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary.

In case of a person who is going at large, with no one controlling or watching him, or detaining him, his body cannot be produced by the person to whom the writ is directed, unless by consent of the alleged prisoner, or by his capture and forcible traduction into the presence of the court.

The record in the present case shows that no such thing was done. The Secretary denies that Wales is in his custody, and he does not produce his body; but Wales, on the direction of the Secretary, appears without any compulsion, and reports

himself to the court and to Justice Cox as he did to the court-martial.

We concur with the Supreme Court of the District in the opinion that the record does not present such a case of restraint of personal liberty as to call for discharge by a writ of *habeas corpus.*

In thus deciding we are not leaving the appellant without remedy if his counsel are right in believing the court-martial has no jurisdiction of the offence of which he is charged. He can make that objection to that court before trial. He can make it before judgment after the facts are all before that court. He can make it before the reviewing tribunal.

If that court finds him guilty, and imposes imprisonment as part of a sentence, he can then have a writ to relieve him of that imprisonment. If he should be deprived of office, he can sue for his pay and have the question of the jurisdiction of the court which made such an order inquired into in that suit. If his pay is stopped, in whole or in part, he can do the same thing. In all these modes he can have relief if the court is without jurisdiction, and the inquiry into that jurisdiction will be more satisfactory after the court shall have decided on the nature of the offence for which it punishes him than it can before. And this manner of relief is more in accord with the orderly administration of justice and the delicate relations of the two classes of courts, civil and military, than the assumption in advance by the one court that the other will exercise a jurisdiction which does not belong to it.

The judgment of the Supreme Court of the District of Columbia is

*Affirmed.*