## Ex Parte Soldini.

### Solicitud para que se expida mandamiento de Habeas Corpus:

No. 18.—Resuelto en Noviembre 4, 1903.

Habeas Corpus.—Prisión.—Para que proceda el auto de Habeas Corpus no es suficiente que haya un mero temor de ser encarcelado sino que es necesario que exista real y verdaderamente la prisión.

Id.—Cuestiones de Derecho.—El procedimiento de Habeas Corpus no puede utilizarse á los efectos de obtener resoluciones sobre determinadas cuestiones de derecho.

Id.—El peticionario fué condenado á la pena de destierro temporal á una distancia de veinte y cinco kilómetros de la ciudad de Bayamón y al pago de multas y costas y promovió estas diligencias de Habeas Corpus: *Se resolvió* que no habiendo verdadera prisión no es procedente el auto de Habeas Corpus, ni puede resolverse en este procedimiento la validez de tal sentencia.

Id.—Modo de Preparar la Solicitud.—La solicitud de Habeas Corpus debe ser firmada y jurada por el peticionario, á no ser que haya razones que lo impidan, y en esté caso, deben hacerse constar en la solicitud.

Los hechos están expresados en la opinión.

Abogado del peticionario: *Sr. Rossy (Manuel F.)*

Abogado del Pueblo: *Sr. del Toro, Fiscal.*

El Juez Asociado Sr. MacLeary, emitió la siguiente opinión del Tribunal:

Esta solicitud fué dirigida al Juez Asociado MacLeary, en 29 de Septiembre de 1903, por Don Manuel F. Rossy, Abogado de Dominique Soldini, pidiendo un auto de habeas corpus, y solicitando que se declare á dicho Soldini libre de la pena de destierro á una distancia de veinte y cinco kilómetros de la ciudad de Bayamón, á que había sido condenado por el término de un año, ocho meses y veinte y un días cuya sentencia estaba sufriendo.

La historia de la causa tal como se halla detallada en la solicitud, pidiendo el citado auto, y en otros documentos que tiene á la vista el Tribunal, es como sigue: En 10 de Marzo de 1902 el peticionario dirigió al Dr. Stahl en Bayamón, una carta que el Doctor consideró como perjudicial á su reputación; y dicho Doctor promovió querella criminal ante el Tribunal de Distrito de San Juan, acusando á Soldini de haber cometido el delito de injurias, castigado por los artícu-

## Ex Parte Soldini.

### Application for a writ of Habeas Corpus.

No. 18.—Decided November 4, 1903.

(1)    That no restraint of liberty was shown to justify the issue of the writ of *habeas corpus*.

    (2)    That the court would not decide, upon an application for a writ of *habeas corpus*, the validity of the sentence imposing upon him the punishment of banishment, fine and costs.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy*, for petitioner.

*Mr. del Toro, Fiscal*, for the People.

Mr. Justice MacLeary delivered the opinion of the court as follows:

This application was made to Associate Justice MacLeary September 29, 1903, by Manuel F. Rossy, Esq., attorney of Dominique Soldini, for a writ of *habeas corpus*, seeking that the said Soldini be declared free of the punishment of banishment for the period of one year, eight months, and twenty one days to a distance of twenty five kilometers from the town of Bayamón, under which sentence he was laboring.

The history of the case, as detailed in the application for the writ, and in other documents before the court, is as follows: On March, 10, 1902, the applicant directed a letter

los 475, 476 y 477 del antíguo Código Penal de Puerto Rico. El Tribunal de Distrito de San Juan conoció de la causa, y en 30 de Agosto de 1902, absolvió al acusado de la acusación, por los motivos consignados en la sentencia. El Doctor Stahl, como acusador privado, interpuso recurso de apelación ante el Tribunal Supremo de Puerto Rico, y en 9 de Marzo de 1903, aquél Tribunal por una mayoría de tres contra dos, declaró que la carta en cuestión era injuriosa, y condenó al recurrido Dominique Soldini, al destierro ya mencionado en la presente, y al pago de una multa de cincuenta dollars, y todas las costas del procedimiento.

Los jueces americanos disintieron de esta sentencia del Tribunal Supremo, por las razones consignadas por cada uno de ellos, respectivamente en votos particulares unidos á los autos. En 5 de Junio de 1903, el Secretario trasmitió copia certificada de dicha sentencia al Tribunal de Distrito de San Juan, para su cumplimiento. Consta de un memorandum no firmado, pero contenido en los autos originales que se le notificó al Juez de Paz de Bayamón la sentencia del Tribunal Supremo, y después se encuentra un telegrama del que aparece que Soldini había sido citado para el fin de ejecutar la referida sentencia, pero que no había comparecido; y que el Juez de Paz tenía noticia de que estaba á punto de embarcarse en el vapor que salía para Nueva York, preguntando el Juez, qué debía hacer. Siguen otros memorandums, ninguno de los cuales demuestra que jamás se había expedido orden de detención alguna.

En la solicitud, pidiendo el auto de Habeas Corpus, no se consigna que Soldini estaba en prisión, ó en manera alguna restringido de su libertad, exceptuando el hecho de haberse dictado la sentencia de destierro contra él. Sin embargo, para concederle el completo beneficio de su solicitud, el auto fué expedido por el Juez Asociado de este Tribunal y dirigido al Jefe de la Policía Insular de la Isla de Puerto Rico, Coronel Terence Hamil, y hecha reversible ante el Tribunal Supremo de Puerto Rico, el día 5 de

to Dr. Stahl at Bayamón, which the Doctor considered offensive to his reputation, and he made a penal complaint before the District Court of San Juan, accusing Soldini of having committed the offense of contumely, punished under articles 475, 476 and 477 of the ancient Penal Code of Porto Rico. The District Court of San Juan tried the cause, and on August, 30, 1902, acquitted the defendant of the charge on the grounds set forth in the judgment. Dr. Stahl, as private prosecutor, took an appeal to the Supreme Court of Porto Rico, and on March, 9, 1903, that court, by a majority of three to two, declared that the letter in question was contumelious, and condemned the appellee Dominique Soldini, to the banishment hereinbefore mentioned, and to pay a fine of fifty dollars and all costs of the proceedings.

From this judgment of the Supreme Court the American Justices dissented for reasons set forth by each of them respectively in dissenting opinions filed in the record of the case. This judgment, on June, 5, 1903, was certified by the Secretary to the District Court of San Juan, for observance. It appears from a memorandum unsigned, but contained in the record of the original case, that the Justice of the Peace of Bayamón was notified of the judgment of the Supreme Court, and a telegram followed that Soldini had been cited, in order to carry into effect the said judgment but that he had not appeared; and that the justice of the peace had notice that he was about to embark on the New York steamer, and asking what he should do. Other unsigned memoranda follow, none showing that any order of arrest had ever been issued.

In the application for the writ of *habeas corpus* it is not stated that Soldini was in confinement, or in any way restrained of his liberty, further than that the judgment of banishment had been rendered against him. However, in order to give him the full benefit of his application, the writ was issued by the Associate Justice of this Court, directed to the Chief of the Insular Police of the Island of Porto Rico,

Octubre, á las diez de la mañana; siendo aquél el primer día de la primera sesión del Tribunal Supremo después de la fecha expresada.    Habiendo comparecido el preso Soldini, fué puesto nuevamente bajo la custodia del Marshal, y después prestó fianza por la suma de mil dollars, para garantizar su comparecencia de día en día, hasta que fuera puesto en libertad.    Se aplazó la causa varias veces con motivo de la enfermedad de uno de los Magistrados, y finalmente, el día 20 de Octubre de 1903, tuvo lugar la vista de dicha causa ante el Tribunal en pleno, aplazándose la sentencia hasta el día de hoy.    El Jefe de la Policía devolvió el auto declarando que ni él ni ningún Oficial bajo sus órdenes en el cuerpo de la Policía Insular, tenía bajo su custodia ó detenido á Dominique Soldini: pero según queda demostrado por ciertos telegramas que fueron presentados, el peticionario fué notificado por el Juez de Paz de Bayamón, del destierro á que según consta fué condenado por el Tribunal. Los telegramas de referencia están unidos al auto devuelto con el informe mencionado, y forman parte del mismo.    Al practicarse la prueba, se declaró ante el Tribunal en el acto de la vista que Soldini residía en el Municipio de Bayamón, á una distancia de cuatro kilómetros de la plaza de aquella Ciudad, y que, por consiguiente su domicilio se hallaba dentro del círculo territorial del que estaba desterrado.

De conformidad con el auto de Habeas Corpus Soldini compareció ante el referido Juez Asociado de este Tribunal, sin estar acompañado por ningún agente de justicia ó de policía, y todos los hechos tienden á demostrar que él no se hallaba bajo ninguna otra restricción, prisión ó encarcelación que la natural aprehensión de ser detenido en caso de que infringiese la sentencia del Tribunal, por la cual había sido desterrado del territorio comprendido en un radio de veinte y cinco kilómetros de la ciudad de Bayamón.

La primera cuestión que debe considerarse al determinar este caso, es si el peticionario se halla ó nó en una situación tal que pueda solicitar el auto de habeas corpus.    No es necesario relatar la historia de este gran auto, que es uno de los baluartes de la libertad de Inglaterra y América, más que lo preciso para definir cuales son sus fines.    El Tribunal

Colonel Terence Hamill, and was made returnable before the Supreme Court of Porto Rico on October 5 at ten o'clock a. m., that being the first day of the next term thereafter. The prisoner Soldini, having appeared was remanded to the custody of the marshal, and afterwards gave bond in the sum of one thousand dollars for his appearance from day to day until discharged. The case was postponed from time to time on account of the sickness of one of the Justices, and finally, on October, 20, 1903, the case was heard by a full court and judgment reserved until the present day. The Chief of Police made a return declaring that neither he nor any officer under his orders, connected with the Insular Police, had in custody or detained Dominique Soldini, but as is shown by certain telegrams produced, the applicant was notified, by the Justice of the Peace of Bayamón, of the banishment to which he appears to have been condemned by the court. The telegrams referred to are attached to the return and made a part of the same. It was stated in evidence before the court, on the hearing that Soldini resided in the Municipality of Bayamón, at a distance of four kilometers from the plaza of that town, and consequently, that his home was within the territorial circle from which he was banished.

In accordance with the writ of *habeas corpus* he voluntarily appeared before the Justice of this court, unattended by any officer, and all the facts go to show that he was under no other restraint, confinement or imprisonment than the reasonable apprehension of arrest, should he violate the judgment of the court by which he was banished from the territory included within the radius of twenty-five kilometers from the town of Bayamón.

The first question to be considered in determining this case, is whether or not the applicant is in a situation to sue out the writ of *habeas corpus*. It is unnecessary to go into the history of this great writ, one of the bulwarks of English and American liberty, further than to define what are its

Supremo de los Estados Unidos ha dicho que su objeto es
libertar al peticionario de una restricción ó prisión ilegal,
no el de castigar al responsable, ó conceder á la parte perju-
dicada reparación por su detención ilegal. Véase Wales
contra Witney, 114, E.E.U.U. 564; y al mismo efecto, la
República contra Chandler, 11 Mass. 83; y Ex Parte Co-
upland, 26 Tex. 386. Véase también Church sobre Habeas
Corpus, sección 87, donde se citan otras muchas causas.

La causa de Wales es casi igual á la de que se trata,
siendo la única diferencia material que dicha causa es la
inversa de esta última. El Doctor Wales era médico Direc-
tor en la Marina, y por orden del Secretario de Marina fué
detenido y confinado á los límites de la Ciudad de Wash-
ington, mientras se resolvían los procedimientos pendientes
ante un Tribunal de Guerra. Él solicitó un auto de habeas
corpus del Tribunal Supremo del Distrito de Columbia que
entonces era el Tribunal de última instancia en el Distrito
Federal, y alegó los hechos de la causa. Aquél Tribunal
denegó su solicitud y desestimó el auto; y él interpuso
recurso de apelación contra esa sentencia ante el Tribunal
Supremo de los Estados Unidos, cuyo alto Tribunal, después
de una detenida consideración de los hechos, declara que la
cuestión de que se trata es:

"Demuestran el informe del Secretario de Marina con respecto al auto, y
los documentos fehacientes que lo acompañan tal restricción de la libertad
del peticionario, por parte de aquel funcionario, que justifique el uso de un
auto de habeas corpus". *Wales* contra *Whitney*, 114 E. E. U. U. 568
y 569.

Subsiguientemente se contesta negativamente esta pre-
gunta en el dictámen del Tribunal, por la razón de que es
evidente que el peticionario no se hallaba bajo ninguna res-
tricción corporal, y que su motivo al solicitar el auto, era
simplemente de que se le condujera ante un tribunal civil,
que, al hacer la investigación del motivo de su prisión,
pudiera declarar que el delito de que le acusaba el Secre-
tario de Marina no revestía carácter militar, y que no era
delito del que podía conocer un Tribunal de Marina, y
librándole de la restricción de la orden de detención, á la

objects. It has been said by the Supreme Court of the United States that its object is to free the applicant from illegal restraint or imprisonment; not to punish the respondent, or to afford the injured party redress for his illegal detention. See *Wales v. Whitney*, 114 U. S. 564; and to the same effect the *Commonwealth v. Chandler*, 11 Mass. 83; and *Ex Parte Coupland*, 26 Tex. 386. See also *Church on Habeas Corpus*, section 87, where many other cases are cited.

The case of *Wales* is nearly parallel to the case at bar, the only material difference being that it is the converse thereof. Dr. Wales was a medical director in the Navy, and was, by order of the Secretary of the Navy, placed under arrest and confined to the limits of the city of Washington, pending proceedings before a court martial. He applied for a writ of *habeas corpus* to the Supreme Court of the District of Columbia, then the court of last resort in that federal district, alleging the facts in the case. That court denied his application and dismissed the writ; and he took an appeal from this judgment to the Supreme Court of the United States which high tribunal, on full consideration of the facts, stated the question at issue to be:

"Does the return of the Secretary of the Navy to the writ and its accompanying exhibits show such restraint of the liberty of the petitioner by that officer, as justifies the use of the writ of *habeas corpus* ?" *Wales* v. *Whitney* 114 U. S. 568 and 569.

Subsequently, in the opinion, this question is answered in the negative, on the ground that it is obvious that the petitioner was under no physical restraint, and that his motive in applying for the writ was merely to have himself brought before a civil court, which, on inquiry into the cause of his imprisonment might decide that the crime with which the secretary charged him was not of a military character, and not one of which a naval court martial could entertain jurisdiction, and by releasing him from 'the restraint of the order of arrest, thus incidentally release him

vez le librase del poder de aquel Tribunal. El Tribunal
Supremo de los Estados Unidos prosigue diciendo:

"Los Tribunales civiles pueden librar á una persona que se halla en pri-
sión bajo la orden de tal Tribunal, solamente por auto de habeas corpus, y
eso solamente cuando se hace constar que dicho Tribunal conoce del asunto
sin ser competente para ello. Si no hay restricción de libertad, el Tribunal
civil no tiene derecho á inmiscuirse en el asunto. Su poder entonces no
alcanza más que á poner en libertad al preso. Dicho Tribunal no puede
perdonar una multa, ó reponer al acusado en su empleo, ó anular la senten-
cia del Tribunal Militar. Cualquiera que sea el efecto que tenga la deci-
sión del Tribunal sobre los procedimientos, órdenes ó sentencias del Tribunal
Militar, dicho efecto depende de la orden poniendo en libertad al preso.
Por supuesto, si no hay preso á quien poner en libertad, si no hay custodia
que levantar, si no hay restricción de libertad que requiera reparación,
entonces el Tribunal civil no tiene poder para intervenir con el Tribunal
Militar, ú otro Tribunal, sobre el cual no tenga jurisdicción de apelación
con arreglo á la ley."

El auto de habeas corpus no es un recurso de casación, aunque en algunos
casos en que el Tribunal que lo expida, tenga poder de apelación sobre el
Tribunal por cuya orden el peticionario se halla bajo custodia se puede
utilizar en unión con el auto de certiorari para ese fin. Sin embargo, en
un caso como el que nos ocupa, no es un recurso de casación. Su objeto es
investigar primero, si el peticionario está coartado de su libertad. Si no lo
está, el Tribunal no puede hacer nada, sino desestimar el auto. Si hay tal
coartación de libertad, entonces el Tribunal puede investigar el motivo para
ello; y si el motivo alegado es ilegal, entonces el Tribunal debe poner en
libertad al preso.

Algo más que una restricción moral de libertad es necesario para consti-
tuir un caso de habeas corpus. Debe haber una prisión de hecho, ó los
medios dispuestos para llevarla á efecto.

El Tribunal citó varias causas falladas por Tribunales de
Estado, que versan sobre el mismo asunto; entre ellas la
causa de Dodge, en 6 Martin, La. 569, Respublica contra
Arnold, 3, Yeates, 263; y varias causas inglesas; y el Tri-
bunal prosigue diciendo:

Todas estas disposiciones tienen por objeto un procedimiento contra alguna
persona que tenga custodia inmediata de la persona detenida con el poder de
conducir el cuerpo de dicha persona ante el Tribunal ó Juez para que sea
puesta en libertad si no se demuestra razón suficiente para lo contrario."
"En el caso de que se trata es una persona que se halla en libertad sin
que nadie la vigile ni detenga, su cuerpo no puede ser presentado por la
persona á quien se dirige el auto, á no ser con el consentimiento del referido
preso, ó por su captura ó conducción forzosa á la presencia del Tribunal."
*Wales* contra *Whitney*, 114 U. S. 570 *et sec.*

from the power of that court. The Supreme Court of the United States goes on to say:

"The Civil Courts can relieve a person from imprisonment under order of such court only by writ of *habeas corpus,* and then only when it is made apparent that it proceeds without jurisdiction. If there is no restraint there is no right in the civil court to interfere. Its power then extends no further than to release the prisoner. It cannot remit a fine, or restore to an office, or reverse the judgment of the military court. Whatever effect the decision of the court may have been on the proceedings, orders, or judgments of the military court, is incidental to the order releasing the prisoner. Of course if there is no prisoner to release, if there is no custody to be discharged, if there is no such restraint as requires relief, then the civil court has no power to interfere with the military court, or other tribunal over which it has by law no appellate jurisdiction."

"The writ of *habeas corpus* is not a writ of error, though in some cases in which the court issuing it has appellate power over the court by whose order the petitioner is held in custody, it may be used with the writ of *certiorari* for that purpose. In such case, however, as the one before us it is not a writ of error. Its purpose is to enquire, first, if the petitioner is restrained of his liberty. If he is not, the court can do nothing but discharge the writ. If there is such restraint, the court can then enquire into the cause of it, and if the alleged cause be unlawful it must then discharge the prisoner."

"Something more than moral restraint is necessary to make a case for writ of *habeas corpus.* There must be actual confinement or the present means of enforcing it."

The court cited several cases by State Courts bearing upon the same subject; among them *Dodge's* case in 6 Martin, La. 569; *Respublica v. Arnold,* 3 Yates, 263: and several English cases; and further proceeds to say:

"All these provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary."

"In case of a person who is going at large, with no one controlling or watching him, or detaining him, his body cannot be produced by the person to whom the writ is directed, unless by consent of the alleged prisoner, or by his capture and forcible traduction into the presence of the court." *Wales v. Whitney,* 114 U. S. 570 *et seq.*

The court then proceeds to affirm the judgment of the

El Tribunal entonces procede á confirmar la sentencia del Tribunal Supremo del Distrito de Columbia, desestimando el auto de habeas corpus, y señala el recurso que tienen los abogados defensores del preso, á favor del mismo. Y en esta causa, lo mismo que en la de Wales, el peticionario (Soldini), no se halla sin su recurso. Él puede, si le place, desatender la sentencia del Tribunal que lo destierra de Bayamón y del territorio situado dentro de un radio de 25 kilómetros de dicha ciudad, y sufrir detención y prisión por efecto de dicha sentencia; y cuando se halle preso ó coartado de su libertad, puede presentar una solicitud, pidiendo el auto de habeas corpus, é impugnar la legalidad de la sentencia. El método de procedimiento está claramente señalado en el Código de Enjuiciamiento Criminal de Puerto Rico, en los artículos 469 hasta el 500, ambos inclusives. La semejanza entre las causas de Wales y Soldini es muy notable. Al primero le estaba prohibido salir de ciertos límites, y al segundo le estaba vedado entrar en un linde fijado. Ninguno de ellos se hallaba preso ni bajo restricción física alguna. Cada uno de ellos abrigaba el temor de ser detenido y puesto preso, si traspasaba cierta línea; cada uno tenía el poder de hacerlo, si estaba dispuesto á sufrir las consecuencias. Cada uno se quejó de que se le había hecho una injusticia, al primero, por una orden del Secretario de Marina, y al segundo por una sentencia de un Tribunal. Cada uno trató de poner á prueba una cuestión legal por medio del auto de habeas corpus, que nunca fué ideado para semejante fin, y que con las limitaciones con que ha sido rodeado por las leyes y las decisiones de los tribunales, no puede ser invocado para ningún fin de semejante naturaleza. Cada uno se ha equivocado en cuanto á su recurso, cualesquiera que sean sus derechos. La causa de Dodge es muy parecida á estas dos causas. Él fué encarcelado con motivo de una demanda civil, y prestó fianza para garantir el pago de una deuda, en el caso que dejase el Estado de Louisiana. A consecuencia de esto fué puesto en libertad, y solicitó entonces un auto de habeas corpus. El Tribunal declaró que no podía librársele de la restricción moral, que era la única fuerza

Supreme Court of the District of Columbia dismissing the writ of *habeas corpus* and points out the remedy which counsel have for the relief of the prisoner. And in this case, as in the case of *Wales*, the applicant Soldini is not without his remedy. He may, if he chooses, disregard the judgment of the court, banishing him from Bayamón, and from the territory within a radius of twenty-five kilometers therefrom, and suffer arrest and detention under the judgment, and when he is imprisoned or restrained of his liberty, may make application for the writ and contest the legality of the judgment. The method of procedure is plainly pointed out in the Code of Criminal Procedure of Porto Rico, under sections 469 to 500 inclusive. The similarity between the cases of Wales and Soldini is very striking. The former was forbidden to pass out of certain limits, and the latter was forbidden to pass within a fixed boundary. Neither was under any imprisonment or physical restraint. Each had before him the fear of arrest and imprisonment, should he cross a certain line; each had the power to do so, if he chose to take the consequences. Each complained of an injustice being done him, the former by an order of the Secretary of the Navy, the latter by a judgment of a court. Each sought to test a legal question by the writ of *habeas corpus*, which was never designed for such a purpose, and, with the limitations thrown around it by the statutes and the decisions of the courts it cannot be invoked for any such purpose. Each has mistaken his remedy whatever may be his rights.

The *Dodge* case is quite similar to both of these. He was committed to jail on civil process, and gave bond that he would pay the debt, should he leave the State of Louisiana. On this he was liberated and sued out a writ of *habeas corpus*. The court held that he could not be relieved of the moral restraint, which was the only force which impeded his movements. *Dodge, ex parte*, 6 Martin's Louisiana Rep. 509. See also 15 *Am. & Eng. Enc.* of Law, p. 159 and cases there cited.

que impedía sus movimientos.    Dodge ex-parte 6 Martins La. Rep. 509.—Véase también 15 Enciclopedia de Leyes Amer. é Ingl. Pág. 159 y los casos allí citados.'

Por cuanto el peticionario en el presente caso no está preso ni coartado de su libertad, legal ni ilegalmente, sino que expontáneamente comparece ante este Tribunal y simplemente solicita una declaración con respecto á la validez de una sentencia anterior, por la que se impone la pena de destierro, multa y costas; y porque tal procedimiento para semejante fin, no está dentro del alcance del auto de habeas corpus, debe. denegarse la solicitud en el presente caso, y permitirse al preso que regrese al lugar de donde ha venido, eximiéndosele de toda responsabilidad con respecto á la fianza que ha prestado anteriormente, y que debe declararse cancelada.

Se observa que en este caso la solicitud de habeas corpus ha sido formulada por Don Manuel F. Rossy, como abogado de Dominique Soldini, y firmada y jurada por él.    Esta es una práctica impropia.   La petición ó solicitud debe en todos los casos ser firmada y jurada por la persona que se halla bajo custodia, encarcelada, ó bajo restricción, á no ser que haya un motivo bien fundado por el que no pueda hacerse esto; y en tal caso debe expresarse claramente dicho motivo en la solicitud.    Véase Church sobre Habeas Corpus Pág. 89, y casos allí citados.    Las costas de este procedimiento deben imponerse al peticionario.

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados Hernández, Figaeras y Sulzbacher.