626

## FACTOR v. FOX, Warden.

### No. 10820.

United States Court of Appeals
Sixth Circuit.

July 5, 1949.

Jesse H. Brown, Chicago, Ill. (Jesse H. Brown, Chicago, Ill., and James E. Haggerty, Detroit, Mich., on the brief), for appellant.

Frank X. Norris, Detroit, Mich. (Joseph C. Murphy, and Frank X. Norris, Detroit Mich., on the brief), for appellee.

Before HICKS, Chief Judge, and SIMONS and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appeal is from an order discharging a writ of habeas corpus after its allowance. At the hearing no oral evidence was taken but the court was presented with a transcript of the proceedings in the Northern District of Iowa when the petitioner was sentenced, and the record and tran-script of a hearing on August 14 and 15, 1947, before the Honorable Gunnar H. Nordbye, United States District Judge for the District of Minnesota, upon a petition for writ of habeas corpus, containing the same allegations set forth in the present petition. Judge Nordbye had announced a memorandum opinion, findings of fact and conclusions of law in discharging the writ. The court below, expressing its awareness that the doctrine of res adjudicata does not extend to decisions on habeas corpus, gave consideration to the fact that two experienced judges had previously considered and denied the validity of the petitioner's grievances, and perceiving no new matter in support of the present petition, discharged the writ.

When the earlier petition was presented to the District Court of Minnesota, Factor was confined in the Federal Correctional Institution at Sandstone, Minnesota. Subsequently he was removed to the Federal Correctional Institution at Milan, Michigan, within the Eastern District of Michigan, so that at the time of the hearing the petitioner and his custodian were both within the jurisdiction of the court. Cf. Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L. Ed. 1898. Before the hearing upon appeal, however, the petitioner was paroled by the United States Board of Parole on February 1, 1949, and released February 7, 1949. Among the conditions attached to the parole, is the requirement that the petitioner shall remain within the limits of the Southern District of California until February 9, 1953, and that he will not leave such limits without the written permission of the probation officer and the approval of the Parole Board. In this situation the appellee asks for the dismissal of the appeal on the ground that the controversy has become moot. In response Factor urges that he is still under restraint and is prevented from going where and when he pleases, that this restraint is more than moral since he is compelled to reside in California, demonstrated by the denial of his application to the probation officer for permission to go to Chicago to confer with counsel and accountants on his income tax return.

The motion to dismiss and the appeal raise interesting questions, requiring a brief

narration of the facts leading to Factor's sentence and present status. On August 20, 1942, Factor was indicted in the Northern District of Iowa for using the mails in a scheme to defraud, and for conspiracy to commit a crime against the United States. Upon arraignment he was represented by two distinguished lawyers, entered a plea of not guilty and trial was set for November 23, 1942. A number of years previously, however, he had been kidnapped and held for ransom by persons designated in the public press as the Touhy gang. Touhy and Banghart were convicted for the kidnapping in 1934 in Cook County, Illinois, mainly upon the evidence of Factor at their trial, and sentenced to a term of 99 years in the Illinois penitentiary. Both Touhy and Banghart had indicated their purpose to revenge themselves upon him if opportunity afforded. On October 9, 1942, both escaped from the Illinois penitentiary. Factor was advised by newspaper reporters, Chicago police officers and FBI agents that he was in danger of his life if he appeared in public places while these men were at large, and that harm might come not only to him but to his family. While residing in Chicago he was given police protection, but that he worried over the situation and became nervous and apprehensive was found by Judge Nordbye to be fairly established.

This was the way things stood when Factor's counsel, Linville, a former United States Attorney for the Northern District of Iowa, later a judge of the district court at Cedar Rapids, and Diamond, the then United States Attorney for the district, called upon Judge Bell of the District Court of Minnesota, who had been assigned to the Northern District of Iowa on account of the illness of the judge of that district. Their purpose was to discuss a possible recommendation by Diamond if Factor should enter a plea of guilty. The suggestion was made that he desired to make restitution to the defrauded parties and wished either a recommendation for probation or for leniency if he entered such plea. The conference brought no recommendation from Diamond, but nevertheless an arrangement was made for Judge Bell to receive a plea of guilty. While this arrangement was not then consummated, Judge Bell was visited by both of petitioner's lawyers on November 17, when the judge was informed by them that they were convinced Factor was guilty and had advised him so to plead. They there pointed out to Judge Bell that the Touhy gang was still at large, that there had been a great deal of publicity in the press as to the trial at Cedar Rapids on November 23, that they desired to advance the date when he would appear in court so that he could enter a plea of guilty and avoid appearance on the publicized date since it was feared that the Touhy gang might try to take vengance at that time.

On November 17 Factor was in court with his counsel according to this second arrangement, his plea of not guilty was withdrawn and a plea of guilty entered. The case was then referred to the probation officer for pre-sentence investigation. Counsel requested deferment of sentence until the April term of court to enable Factor to make restitution. Factor's bail was continued and sentence was deferred to such date in the future as the court should designate. Meanwhile, Factor was engaged in efforts to make restitution. In a letter to the probation officer at Chicago who was assisting in the pre-sentence investigation, Factor reported a list of his alleged victims showing the total amount of the defrauding to be $147,750. He later listed restitution on various dates in sums totaling upwards of $15,000.

On December 29, 1942, Touhy and Banghart were apprehended and returned to the Illinois penitentiary. That fact became known to Factor and his counsel, Factor still being out on bail. On February 2, 1943, he was ordered by Judge Bell to appear in court at Cedar Rapids for sentence. A motion for further continuation was denied and sentence was imposed. Later, however, a stay of execution was granted to December 12, 1943, during which time Factor was still at liberty upon his bond.

In respect to the colloquy with the court at the time of sentence there is controversy as to whether Factor or his counsel had

made clear to Judge Bell that the only or main reason he had entered the plea of guilty was fear of the Touhy gang. No motion, however, was made at that time to withdraw his plea of guilty, or to vacate or set aside the judgment of conviction, and no appeal was taken. Nor was any motion made or proceedings had to set aside the judgment up to the time of filing of the petition in the District Court of Minnesota for a writ of habeas corpus, some four years after the judgment was entered. Judge Nordbye concluded that the fears entertained regarding the court appearance on November 23 were apparently ended when the plea was entered on November 17, 1942, because Factor had been successful in advancing the date of his court appearance, and that Factor was only concerned with obtaining time to make restitution in the hope of getting leniency. While after the capture of Touhy and Banghart on December 29 there was no further need to fear reprisals, nevertheless no request was made for a change of plea or a public trial thereafter. Judge Nordbye therefore concluded that the suggested fear of the Touhy gang was made for the purpose of obtaining leniency or additional time to make restitution, and that Factor was not coerced into entering his plea of guilty, and that to say that his plea was involuntary is contrary to every reasonable hypothesis which the undisputed facts suggest. He denied Factor's application and the court below, accepting his findings and approving his reasoning, came to a like decision upon the merits of the present petition.

While upon consideration of the motion to dismiss the appeal we find it unnecessary to decide the meritorious issue presented, we have, however, thus sketchily detailed the grounds upon which the petition rests so that the entire picture is disclosed in the event our decision upon the motion to dismiss may, for reasons we do not now apprehend, be found to be unsound. A consideration of the motion raises a number of interesting questions in addition to the question whether habeas corpus will lie at the suit of one who has been released upon parole. There is the question whether, in the present status of the case, Warden Fox is a proper party defendant, and there has been no motion to substitute other defendants. Another query that suggests itself is whether the district judge could act upon the petition when other available remedies have not been sought, since there is no evidence that petitioner has ever applied to the sentencing court for permission to withdraw his plea of guilty on the ground that it was induced through fear. We set them aside, however, without decision, because the conclusion we arrive at is that the motion to dismiss on the ground that the controversy is now moot is well taken. It is interesting to note, however, that while prior to 1948 the Parole Act provided that a prisoner upon parole remains in the custody of the warden of the prison from where paroled, § 4203, Title 18, of the new Judicial Code, provides that while on parole a prisoner shall remain in the legal custody and under the control of the Attorney General.

There is no unanimity of opinion as to whether a parolee may apply for a writ of habeas corpus when he is no longer restrained by the warden from whom he seeks to be discharged. The appellant relies upon a number of cases including Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247, wherein it was said that "while parole is an amelioration of punishment it is in legal effect imprisonment, parole being merely an extension of the prison walls." However, the precise question to which we confine ourselves here was very carefully considered in Van Meter v. Sanford, 5 Cir., 99 F.2d 511, wherein, in a very careful opinion by Judge Sibley on almost identical facts, it was said that the appeal must be dismissed because the petitioner is "no longer in the custody or control of the Warden of the Penitentiary. Such control as is now exercised over him is exercised by wholly different persons, to-wit, the Board of Parole, of which the Warden is not a member, and the Probation Officer of the District of Maryland. The Warden since Van Meter's conditional release has had no custody of him, could not produce his body to answer the judgment of the court, and can exercise no control over him." The case relies upon Wales v. Whitney, 114 U.

S. 564, 5 S.Ct. 1050, 29 L.Ed. 277, and was followed and approved in Weber v. Hunter, 10 Cir., 137 F.2d 926. While Ex Parte Mitsuye Endo, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243, holds that a controversy does not become moot by the removal of the petitioner in a habeas corpus proceedings from one circuit to another so long as there is present within the district one responsible for his detention, who would be an appropriate respondent, that principle applies only to one who has "custody of the prisoner." 323 U.S. at page 283, 65 S.Ct. at uage 221. It is difficult to infer such custody by a Michigan warden over a prisoner in California, in the theoretical custody of the Parole Board, the Attorney General or a California probation officer.

Whatever may have been earlier doubts as to the true rule they are now completely set aside by the decision of the United States Supreme Court in Weber v. Squier, Warden, 315 U.S. 810, 62 S.Ct. 800, 86 L.Ed. 1209, where the petition of Weber was denied on the ground that the case was moot, "it appearing that petitioner has been released upon order of the United States Board of Parole and that he is no longer in the respondent's custody." An examination of the court of appeals decision in the Squier case, 9 Cir., 124 F.2d 618, discloses that the parole of Weber was not unconditional and followed the usual practice in such cases. We are, of course aware of the repeated admonitions of the Supreme Court that a decision denying certiorari is not to be taken as a precedent or as indicating any view as to the merits of a controversy. We find, however, upon an examination of innumerable certiorari decisions that no reasons are given for denial excepting only in such cases where denials are based on lack of jurisdiction. A proceeding that has become moot is such a case, for it no longer involves a case or controversy in the constitutional sense. So when there is a denial of a petition for certiorari upon a stated jurisdictional ground, we must assume it to be a precedent controlling upon us unless and until we are otherwise advised. The appellee's motion must be granted.

Appeal dismissed.