**UNITED STATES ex rel. Louis V. BOSCOLA, Petitioner,**

v.

**Rear Admiral A. M. BLEDSOE, U. S. Navy; Captain J. J. Greytak, U. S. Navy; and Charles S. Thomas, Assistant Secretary of Defense for the Navy, Respondents.**

**UNITED STATES of America on the relation of Peter J. SMITH, Relator,**

v.

**Charles S. THOMAS, Assistant Secretary of Defense for the Navy; A. M. Bledsoe, Rear Admiral, U. S. Navy; and J. J. Greytak, Captain, U. S. Navy, Respondents.**

**Nos. 4101, 4105.**

United States District Court
W. D. Washington, N. D.

May 1, 1956.

Charles P. Moriarty, U. S. Atty., and Edward J. McCormick, Jr., Asst. U. S. Atty., Seattle, Wash., for appellants.

Day & Westland, Kennewick, Wash., for appellee Boscola.

Rummens, Griffin, Short & Cressman, Seattle, Wash., for appellee Smith.

LINDBERG, District Judge.

This matter is before the court after a hearing upon a return to an order to show cause why the prayer of petitioner should not be granted, which order was issued upon the filing of a petition for

writ of habeas corpus in each of the above cases. By stipulation the cases were consolidated for hearing, common questions of law and fact being present.

Both Boscola and Smith having completed thirty years in the Navy as enlisted men were retired under the provisions of Title 34 U.S.C.A. § 431.[1] Both were prosecuted, pleaded guilty and were imprisoned in the Washington State Penitentiary for offenses committed several years after leaving active service in the Navy, Smith having been in the Fleet Reserve rather than on the retired list at the time of committing his offense. Boscola was charged with carnal knowledge and Smith with manslaughter.

Following conviction and imprisonment by the State of Washington the Navy concluded that both men should be ordered into active service under the provisions of 34 U.S.C.A. § 433[2] for the purpose of court-martial because of the serious nature of the offense in each case.

On the day they were released on parole from the Washington State Penitentiary each was met at the gate of the penitentiary by a Chief Petty Officer of the Navy and served with orders recalling them to active duty and directing them to report to the guard delivering the orders and proceed in his custody to the United States Naval Receiving Station at Seattle, Washington to await further orders. On March 7, 1956 each was ordered to restricted status, which status was defined in special instructions on the reverse side of their orders (See Exhibits 1 and 6), as follows:

"The limits of your restriction are defined as your barracks and the mess hall of the receiving station only."

Boscola on March 7, 1956 and Smith on March 12, 1956 filed petitions for writs of habeas corpus alleging that each was being illegally restrained by the Navy and praying for release from further custody and detention.

Petitioners contend, first, that the Navy has no authority to recall them to active duty solely for the purpose of subjecting them to trial by general court-martial, and second, that the Navy does not have court-martial jurisdiction over a retired enlisted man for crimes such as allegedly committed by them several years after their separation from active service.

Respondents take the position with respect to petitioners' first contention that Boscola and Smith are on active duty in the United States Navy pursuant to competent orders, that the restraint upon their liberty is a moral restraint resulting from obedience to orders rather than a physical restraint as would constitute custody sufficient to support a discharge under a writ of habeas corpus. In their return respondents allege in paragraph IV:

"Petitioners are lawfully on active duty and are restrained of their liberty in no other way by any respondent before this court."

Their position as to custody apparently is based upon the case of Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277, which case still appears to be the law. However, before determining whether the facts as to restraint in the present cases are such as to make the rule announced in Wales v. Whitney, supra, applicable it would appear necessary to first decide whether petitioners have been lawfully called back to active duty by the Navy.

In their brief on this issue,

"Respondents concede that, if their orders to active duty be without authority, petitioners are entitled to release from active duty in the same sense that inductees (not lawfully inducted) or deportees (who are really entitled to be at liberty) are entitled to be released from the control of those who order their activities."

At the time of hearing, while insisting that the fact was not material, respondents stipulated that the purpose of recalling the petitioners to active duty

---

1. Now 10 U.S.C.A. § 6326.

2. Now 10 U.S.C.A. § 6482.

was for the purpose of court-martial. The facts, as they are disclosed from the written stipulation and copies of letter orders to active duty attached thereto, as well as from the testimony of petitioners and the exhibits admitted in evidence do not disclose that petitioners were recalled for any particular duty or that any duty has been assigned them. Rather, the evidence as well as the lack thereof would tend to establish that petitioners were recalled ostensibly for active duty but in reality for no duty and actually to accomplish an undesirable discharge (Exhibit No. 4).

It is agreed that the authority, if it existed, to order petitioners into active service is derived from 34 U.S.C.A. § 433 (March 3, 1915, c. 83, 38 Stat. 941; Aug. 29, 1916, c. 417, 39 Stat. 591), which provides:

> "The Secretary of the Navy is authorized in time of war, or when a national emergency exists, to call any enlisted man on the retired list into active service for such duty as he may be able to perform. While so employed such enlisted men shall receive the pay and allowances authorized by section 26 of Title 37, except as otherwise provided in the next section."

■■ As the court understands respondents' contention it is that under said statute, in time of war or when a national emergency exists, the Secretary of the Navy is authorized to call any enlisted man on the retired list into active service without qualification. Assuming, without conceding that the national emergency declared by President Truman of December 16, 1950, Proclamation No. 2914, 50 U.S.C.A.Appendix preceding section 1, is still in effect for the purposes of said statute, such an interpretation would in effect ignore the words "for such duty as he may be able to perform." It is a general rule that the courts, in the interpretation of a statute, may not take, strike, or read anything out of a statute, or delete, subtract, or omit any-

thing therefrom. Rather, effect should, if possible, be accorded to every word and phrase. 50 Am.Jur. § 231. Hence, a construction will be avoided which would render a part of a statute superfluous, or which would give to a particular word or phrase a meaning that adds nothing to the statute. 50 Am.Jur. § 359.

■ It follows that a plain and reasonable construction of the language used requires that some meaning be given the words "for such duty." Congress must have intended that an enlisted man on the retired list, if called to active service, would be called for the purpose of performing some duty. Can it be contended in good faith that awaiting trial by court-martial or making application for undesirable discharge because of an offense committed years after separation from active service and unrelated to the naval forces, activity or business, was a type or category of duty contemplated by Congress when the Secretary of Navy was authorized in time of war or national emergency to recall retired enlisted men into active service for such duty as they might be able to perform. The court believes not.

Respondents cite United States ex rel. Pasela v. Fenno, 2 Cir., 167 F.2d 593, 594 in support of their position that petitioners could lawfully be recalled to active duty for purpose of court-martial. It must be admitted that the court's reasoning in the language used, namely, "Thus appellant could lawfully be recalled to active duty, nothing in the statute or legislative history indicating that a call to active duty solely for purposes of court-martial proceedings is not permissible," tends to sustain their contention. However, there the court was interpreting a different statute—34 U.S.C. § 853c, (1946 edition)[3]—applicable to the Naval Reserve, which provided:

> "Any member of the Naval Reserve, including those on the honorary retired list created by section 855h of this title, or who may have been retired, may be ordered to ac-

3. Now 10 U.S.C.A. § 672.

tive duty by the Secretary of the Navy in time of war or when in the opinion of the President a national emergency exists and may be required to perform active duty throughout the war or until the national emergency ceases to exist; but in time of peace, except as otherwise provided in the Naval Reserve Act of 1938, he shall be ordered to or continued on active duty with his own consent only: Provided, That the Secretary of the Navy may release any member from active duty either in time of war or in time of peace. (June 25, 1938, ch. 690, title I, § 5, 52 Stat. 1176; June 13, 1939, ch. 205, § 12(d), 53 Stat. 821; June 24, 1941, ch. 233, § 2, 55 Stat. 261; Aug. 4, 1942, ch. 547, § 15(b), (d), (e), 56 Stat. 739.)"

It will be noted that the language applicable varies substantially from that used in 34 U.S.C.A. § 433 and permits of a varied interpretation. Further, while this court has the utmost respect for the authority and opinions of the Court of Appeals of the Second Circuit it appears that the reasoning followed in the language quoted is not compelling as applied to the statute and facts here involved. It should be noted further that in that case certiorari was granted by the Supreme Court and subsequently the review was dismissed by stipulation.

■ Respondents further contend that this court has no right to examine into the status of petitioners within the naval service, and cite as authority United States ex rel. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842. In that case the petitioner admitted he was lawfully inducted into the Army but sought release because he had not been assigned to specialized duties nor given the commissioned rank to which he claimed to be entitled by the circumstances of his induction. Here we are concerned with the lawfulness of the recall to duty and not with an assignment to duty after *lawful* induction or recall. The Or-

loff decision, while concerned with an issue differing materially from that here involved would in certain of its language appear to challenge respondents' position rather than support it. The court there stated (345 U.S. at page 88, 73 S.Ct. at page 537):

"To separate particular professional groups from the generality of the citizenship and render them liable to military service only because of their expert callings and, after induction, to divert them from the class of work for which they were conscripted would raise questions not only of bad faith but of unlawful discrimination. We agree that the statute should be interpreted to obligate the Army to classify specially inducted professional personnel for duty within the categories which rendered them liable to induction. It is not conceded, however, that particular duty orders within the general field are subject to judicial review by habeas corpus."

This language would seem to sustain the proposition that the Navy may not lawfully order or recall an enlisted man on the retired list to active duty under a statute clearly anticipating a recall for the performance of further duty as a guise for an unrelated purpose, namely, for the avowed and only purpose of obtaining his consent to an undesirable discharge wholly and completely from further duty or in the alternative to subject him to court-martial, presumably with the same objective.

It is the opinion of the court that under the evidence and applicable law in these cases the petitioners have been unlawfully called into active duty and are entitled to be released therefrom.

Having so concluded the issues involved in petitioners' second broad contention as to the court-martial jurisdiction of the Navy over retired enlisted men for offenses such as here involved under the Code of Military Justice, particularly 50 U.S.C.A. § 552(4),[4] are not reached.

4. Now 10 U.S.C.A. § 802.

The respondents having taken the position, as they do in their return, that petitioners are lawfully on active duty and are restrained of their liberty in no other way, it must be assumed that if petitioners' recall to active duty was unlawful respondents will impose no further restraint upon them in connection with any court-martial proceedings now instituted and pending against them as disclosed by the record before this court.

The court for the reasons above set forth will sustain the writ and discharge the petitioners.