BIRCH, Circuit Judge:
In this case of first impression, we decide whether 42 U.S.C. § 1997e(e), a provision of the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321 (1996) (“PLRA”), applies to claims that arise out of the arrest of an imprisoned plaintiff and claims unrelated to the current incarceration of that plaintiff. The *531 district court held that § 1997e(e) applied under the facts of this case, and we AFFIRM.
I. BACKGROUND
On 30 September 1997, deputies Karen J. Preslicka and Sandra M. Pomeroy approached Louis Napier and asked him for identification. Napier produced a valid Florida drivers’ license, and the deputies departed, only soon to return to arrest Napier for trespassing. According to these deputies, Louis Napier was actually John Napier, who had received a trespass warning two years earlier, on 29 July 1995. John Napier is actually Louis’s brother, but despite both Louis Napier and his companions making this distinction, the deputies persisted in the arrest and transported Napier to a pre-trial detention facility. The charge eventually was nolle prossed.
Later, while imprisoned on a separate offense, Louis Napier filed a 42 U.S.C. § 1983 action against the two deputies in which he alleged that he suffered embarrassment and mental anguish from the deprivation of his Fourth Amendment rights occasioned by the September 1997 mistaken arrest and imprisonment. In this action, Napier proceeded pro se and in foivna pauperis, as he does on this appeal. The district judge found that, because Napier had not alleged any physical harm arising from the actions of the deputies, he was not entitled to bring the action under the dictates of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e). Without a valid legal basis for the claim, the district judge felt compelled to dismiss without prejudice the in forma pauperis complaint as frivolous, per 28 U.S.C. § 1915(e)(2)(B)(i).[1]
II. DISCUSSION
A. Standard of Review
We review for abuse of discretion a district judge’s decision that an informa pauperis complaint is frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1315 (11th Cir.2002); Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.2001). For purposes of § 1915(e)(2)(B)®, an action is frivolous if it is “without arguable merit either in law or fact.” Bilal, 251 F.3d at 1349. Because the district judge based its decision on legal frivolity, we must examine the validity of his assumption that § 1997e(e) prohibited this lawsuit in order to determine whether he abused his discretion under § 1915.
B. Applicability of k.% U.S.C. § 1997e(e)
Subsection (e) of 42 U.S.C. § 1997e states that “[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.” This statute is intended to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints. See Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir.2000) (en banc) (surveying the legislative history of the PLRA). An action barred by *532 § 1997e(e) is barred only during the imprisonment of the plaintiff; therefore, such action should be dismissed without prejudice by the district court, allowing the prisoner to bring his claim once released and, presumably, once the litigation cost-benefit balance is restored to normal. Id. at 980.
Tracking the language of the statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody. In Harris, we decided that the phrase “Federal civil action” means all federal claims, including constitutional claims. 216 F.3d at 984-85. This § 1983 action brought by Napier is a “Federal civil action” under this definition. We also had opportunity in Harris to clarify fully the meaning of the phrase “brought by a prisoner,” holding that the PLRA applies to all cases initiated by a prisoner, without regard to whether that prisoner was released before the court considered the merits of his action. Id. at 974. It is undisputed that Napier filed his complaint while imprisoned. It is also undisputed that Napier’s complaint alleges only emotional' injuries, so as to satisfy the third predicate for the application of § 1997e(e).
The new legal issues in this case surround the fourth predicate, requiring that the emotional injury be “suffered while in custody.” In particular, the question is whether this phrase is inclusive of injury suffered during the arrest of an individual on a charge unrelated to the present confinement.[2]
1. Injury suffered during arrest
We have not yet addressed whether the words “suffered while in custody,” as used in § 1997e(e), cover more than just injury occurring while confined in a correctional institution. In matters of statutory interpretation, we give overriding deference to the unambiguous language of the statute. Harris, 216 F.3d at 972-73.
Looking at the statute as a whole, Congress was aware of its ability to restrict the application of the statute to persons confined in a correctional institution by using the term “prisoner” and defining that term in the statute itself. Congress chose not to use the more restrictive “prisoner” language, instead opting to apply the statute to injuries occurring while in custody. Congress is presumed to know the settled legal meaning of the terms it uses in enacted statutes and to use those terms in the settled sense. Harris, 216 F.3d at 974. The common usage of “custody,” in the Miranda context in which the definition most often arises, reflects not just imprisonment, but, rather, any situation in which a reasonable individual would feel a restraint on his movement such that he would not feel free to leave. Minnesota v. Murphy, 465 U.S. 420, 430, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984); Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir.2001). Formal arrest is considered the archetype of a situation that results in Miranda custody. Murphy, 465 U.S. at 430, 104 S.Ct. at 1144 (holding that custody for Miranda purposes means “formal ar *533 rest or restraint on freedom of movement ... associated with formal arrest”).
Given the structure of the statute, in particular, the lack of explicit connection between the term “custody” and the more restrictive phrases in the statute dealing with prisoner status and incarceration, and its plain language, we find that “custody” should be interpreted in light of its common definition. Accordingly, we find that the PLRA should apply to prisoner lawsuits that claim injuries suffered during custodial episodes, even if such custody occurred outside prison walls.
Turning to the particular circumstances of this case, Napier claims that he suffered injury from his mistaken arrest by the officers. The embarrassment or emotional harm occasioned by the mistaken arrest occurred, at the earliest, when Napier was arrested—or, using the Miranda construct, at the moment that a reasonable person in his situation would feel unable to leave. Because the harm complained of by Napier occurred while he was in custody, the PLRA applies to his claim, assuming the PLRA applies to causes of action unrelated to the plaintiffs present incarceration, as we must now discuss.
2. Injury occurring during a prior unrelated custodial episode
Based on our finding that Napier was “in custody” while the harm from the mistaken arrest accrued, it follows that were Napier imprisoned based on the trespass charge, he would be prohibited under the PLRA from bringing suit while thus imprisoned unless he alleged physical injury. In this case, however, Napier is not imprisoned on the trespass charge, but instead is imprisoned on an entirely unrelated offense. It could be argued that the PLRA’s limitations should not apply to this case because the harm occurred during custody unrelated to Napier’s current confinement.
Again, we are forced to examine the meaning of the phrase “in custody,” which by its plain language does not provide a temporal restriction on the custodial episode to which it relates. One could argue that the phrase “in custody” is meant to refer to the present custody, that custody for which the prisoner is in fact currently a prisoner, or that the phrase “in custody” is meant to refer, without reference to the other parts of the statute, to past or present instances of custody. The first interpretation might reflect a narrow purpose of the PLRA to reduce frivolous prison condition litigation, those suits brought by prisoners to challenge what they view as unacceptable or, indeed, unconstitutional circumstances of their present confinement.
However, the first interpretation is not supported by the plain language of the statute, and it is that language to which we ultimately must turn. Congress could have drafted the statute to say “while thus imprisoned” or “while in that custody” or “during the aforementioned confinement” to specifically tie the clause in question to the antecedent in order to ensure that the first interpretation was followed. Even more simply, Congress could have used “while imprisoned” as it uses “prisoner” earlier in the statute if its intent was to limit the claims subject to the PLRA to those arising from harm accrued only in that limited venue.
Again, the problem with a narrow interpretation of “custody” is that Congress obviously knew how to limit the application of the statute to prisoners or to events occurring in prison, but did not do so, opting instead to use the common phrase “while in custody.” “When the import of the words Congress has used is *534 clear, as it is here, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.” Harris, 216 F.3d at 976. The impact of this language, which is unrestricted to present custody, is that the PLRA covers all federal civil lawsuits filed by prisoners concerning emotional or mental injury suffered while in past or present custody, even if the subject of the filed lawsuits is unrelated to the current imprisonment.[3]
Practically, the problem of frivolous lawsuits filed by prisoners is not limited exclusively to those lawsuits dealing with conditions of confinement. The natural target of a prisoner’s litigious aggression is the government, and, as in this case, the vectors for such aggression are not limited to lawsuits challenging prison conditions. Rather, prisoners have cause and opportunity to file frivolous complaints concerning the range of alleged slights imposed upon them by the government during their custodial episodes, both past and present, both in prison and in the back seat of a police cruiser.
III. CONCLUSION
For the reasons stated above, the district court did not abuse its discretion by dismissing Napier’s complaint. The PLRA forbids the litigation of this lawsuit while Napier is imprisoned, as he complains of injury occurring while he was in custody, and he did not allege physical injury arising from the actions of the defendant officers.[4] Therefore, we AFFIRM.

. The relevant part of that statute states:
[T]he court shall dismiss the case at any time if the court determines that—
(A) the allegation of poverty is untrue;, or
(B) the action or appeal—
(i)is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.
28 U.S.C. § 1915(e)(2).

. Napier’s complaint could be read to allege injuries arising from his mistaken pretrial detention following his arrest for trespassing. However, Napier admits that § 1997e(e) would bar his lawsuit for injury arising from pretrial detention. He chooses instead to proceed on his claims for injuries arising distinctly from his arrest, and, accordingly, we see no reason to discuss the viability of any forfeited claims arising from the pretrial detention.

. We wish to stress that the effect of the PLRA is only to require that the prisoner wait until his term of imprisonment ends before bringing those federal actions subject to the PLRA. See Harris, 216 F.3d at 980. Congress presumed that post-incarceration filings of these types of suits would more properly reflect the ■ opportunity costs of litigation and would filter out those of questionable merit.
The Eleventh Circuit has not yet been faced with a case that involves a prisoner’s claim that is both barred by the PLRA during imprisonment and barred by the applicable statute of limitations after release from prison, thereby giving the plaintiff no opportunity to ever have his claim heard on the merits by a federal court. We proffer, but do not hold, as that issue is not before us, that such a result may be mitigated by the doctrine of equitable tolling, as other circuits have applied that doctrine to the administrative exhaustion requirement for prison condition suits under 42 U.S.C. § 1997e(a). See, e.g., Clifford v. Gibbs, 298 F.3d 328, 332-33 (5th Cir.2002).

. Given our resolution of the case, we do not find it necessary to analyze the substantive viability of Napier’s constitutional claim.