[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 27, 2003
THOMAS K. KAHN
CLERK

No. 00-13064

D. C. Docket No. 00-00156-CV-J-20A

LOUIS NAPIER,

Plaintiff-Appellant,

versus

KAREN J. PRESLICKA,
Jacksonville Sheriff's Officer,
SANDRA M. POMEROY, Jacksonville
Sheriff's Officer, #6720,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 27, 2003)**

ON PETITION FOR REHEARING EN BANC

(Opinion December 10, 2002, 11th Cir.)

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS and WILSON, Circuit Judges.

BY THE COURT:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Petition for Rehearing En Banc is DENIED.

BARKETT, Circuit Judge, dissenting from the denial of rehearing en banc:

I believe the issue in this case merits en banc consideration. While in prison, Napier filed a § 1983 suit against two deputies based on activities which occurred months before the events leading to his present confinement. Thus his lawsuit has nothing to do with the circumstances of his present incarceration. The Napier panel interpreted 42 U.S.C. § 1997e(e), a provision of the 1995 Prison Litigation Reform Act, Pub.L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), to bar Napier's claim, holding that when § 1997e(e) states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," the word "custody" refers to any instance of "Miranda custody," including prior, unrelated arrests. See Napier v. Preslicka, 314 F.3d 528, 532-34 (11th Cir. 2002). This unjustified expansion of § 1997e(e) to prevent prisoners from seeking remedies for violations that predate and have no relation to the events leading to their current incarceration finds little support in the language, structure or history of the PLRA. The panel's holding also conflicts with this Court's previous interpretations of § 1997e(e) and has troubling implications that reach far beyond the specific facts of this case. Accordingly, I

3

believe that <u>en banc</u> review of the panel's decision is warranted to reconsider the appropriate reach of § 1997e(e).

## I. The Panel's Holding Finds Little Support in the Language, Structure, or History of the PLRA

The starting point for statutory interpretation is the language of the statute itself. <u>United States v. DBB, Inc.</u>, 180 F.3d 1277, 1281 (11th Cir. 1999) (citing <u>Watt v. Alaska</u>, 451 U.S. 259, 265 (1981)). When the meaning of a statute is unambiguous, there is no need to examine legislative history, since "we do not resort to legislative history to cloud a statutory text that is clear." <u>Ratzlaf v. United States</u>, 510 U.S. 135, 147-48 (1994). When a statute is unclear or ambiguous, however, resort to legislative history is required. <u>Toibb v. Radloff</u>, 501 U.S. 161, 162 (1991); <u>Blum v. Stenson</u>, 465 U.S. 886, 896 (1984). Moreover, whether statutory language is clear or ambiguous cannot be determined apart from its circumstances. "In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning–or ambiguity–of certain words or phrases may only become evident when placed in context." <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 132 (2000). Accord <u>Bailey v.</u>

4

<u>United States</u>, 516 U.S. 137, 145 (1995) ("We consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme."); <u>Brown v. Gardner</u>, 513 U.S. 115, 118 (1994) ("The meaning of statutory language, plain or not, depends on context."); <u>DBB, Inc.</u>, 180 F.3d at 1281 ("We do not look at one word or term in isolation, but instead we look to the entire statutory context.").

The <u>Napier</u> panel's interpretation of 42 U.S.C. § 1997e(e) runs counter to these well-established principles. Section 1997e(e) states that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The key word for our purposes is "custody." Does its extension include arrests occurring years before the events leading up to a prisoner's current incarceration, so that, for example, an individual who was falsely arrested in 1996 and subsequently convicted and imprisoned for unrelated conduct in 1999 would be precluded from seeking relief for the 1996 violation? Or did Congress intend "custody" in the context of § 1997e(e) to refer merely to "prison custody," as its antecedent "a prisoner confined in a jail, prison, or other correctional facility" implies?

Relying on "the plain language" of § 1997e(e), the <u>Napier</u> panel opts for the former, vastly more expansive interpretation, holding that the word "custody" in §

5

1997e(e) encompasses <u>all</u> of a prisoner's prior arrests, whether or not they are related his current confinement "in a jail, prison, or other correctional facility." <u>Napier</u>, 314 F.3d at 532-34. In my judgment, this holding depends on interpreting a statutory word out of its context in exactly the manner cases such as <u>Brown & Williamson Tobacco Corp.</u>, <u>Bailey</u>, <u>Gardner</u>, and <u>DBB, Inc.</u> warn against.

The panel's decision involves two steps. First, the panel presumes that Congress used "custody" in § 1997e(e) "in the settled sense" to mean "<u>Miranda</u> custody" or any "'formal arrest or restraint on freedom of movement.'" <u>Id.</u> at 532-33 (quoting <u>Minnesota v. Murphy</u>, 465 U.S. 420, 430 (1984)). Accordingly, the panel finds that § 1997e(e) applies to prisoner lawsuits that allege injuries suffered while in custody "even if such custody occurred outside prison walls." <u>Id.</u> at 533. Second, because § 1997e(e) "by its plain language does not provide a temporal restriction on the custodial episode to which it relates," the panel determines that its scope extends even further to include prior, unrelated arrests, such as Napier's. <u>Id.</u> at 533-34.

The panel's reasoning is unsupported and unpersuasive. As the panel implicitly concedes, "custody" as it occurs in § 1997e(e) is plainly ambiguous.[1]

---

[1] As the panel majority acknowledges, "custody" as it occurs in § 1997e(e) could refer to any formal arrest or restraint on freedom of movement related to a prisoner's current incarceration (first interpretation), or it could refer to any such arrest or restraint related <u>or unrelated</u> to his current

6

Indeed, the government's attorney repeatedly acknowledged this ambiguity at oral argument.[2] Further, this Court has repeatedly assumed that "custody" as it is used in § 1997e(e) refers to prison custody.[3] The panel's "plain language" argument would imply that these paraphrases are not only incorrect but inconceivable.[4]

---

incarceration (second interpretation). Napier, 314 F.3d at 532-34. Additionally, it also could refer to a prisoner's current "prison custody," i.e., to his current incarceration in what § 1997e(e) terms "a jail, prison, or other correctional facility" (third interpretation). Id. at 532. As Judge Propst observes in his dissenting opinion, "custody" also could refer to any prison custody, i.e., to a prisoner's current or previous confinement in a correctional facility (fourth interpretation). Id. at 535. Finally, in light of Jones v. Cunningham, 371 U.S. 236 (1963), and its progeny, § 1997e(e)'s custody requirement could conceivably be satisfied where a petitioner alleges injuries that were suffered while he was released on probation, parole, or bail (fifth interpretation). Id. at 536. Only under the second interpretation–which the panel majority insists is mandated by § 1997e(e)'s "plain language"–would Napier's lawsuit necessarily be precluded.

[2] See tape of oral argument in Napier v. Preslicka, No. 00-13064, 9/11/02.

[3] See, e.g., Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1317 (11th Cir. 2002) ("We conclude that § 1997e(e) does not apply to prisoner lawsuits unrelated to prison conditions filed in state court based solely on state law and removed by defendants to federal court based on diversity jurisdiction."); Harris v. Garner, 216 F.3d 970, 979-80 (11th Cir. 2000) (en banc) ("Because section 1997e(e) applies only to claims filed while an inmate is confined, it does not prevent a former prisoner from filing after release a monetary damages claim for mental and emotional injury suffered while confined, without a prior showing of physical injury."); Harris v. Garner, 190 F.3d 1279, 1285 (11th Cir. 1999) ("In light of the overwhelming clarity of the statutory text, we join the Seventh Circuit in holding that section 1997e(e) applies only to prisoners who are incarcerated at the time they seek relief, and not to former prisoners who seek damages for injuries suffered while they were incarcerated.") (emphases added).

[4] The panel attempts to defend its conclusion that § 1997e(e) unambiguously precludes lawsuits by prisoners for injuries suffered during arrests unrelated to their present confinement by reasoning that had Congress intended otherwise, it could have drafted § 1997e(e) more clearly:

One could argue that the phrase "in custody" is meant to refer to the present custody, that custody for which the prisoner is in fact currently a prisoner, or that the phrase "in custody" is meant to refer, without reference to the other parts of the statute, to past or present instances of custody. The first interpretation might reflect a narrow purpose of the PLRA to

7

Moreover, the panel's reliance on "the settled legal meaning" of "custody" is misplaced.[5] Unlike the word "brought," which this Court noted in Harris had a "long history of established meaning," 216 F.3d at 974, the judicial definition of "custody" has been anything but settled. Instead, it has been fluid and context-dependent.[6] Since there is no single, settled legal meaning of "custody," the

reduce frivolous prison condition litigation, those suits brought by prisoners to challenge what they view as unacceptable or, indeed, unconstitutional circumstances of their present confinement. However, the first interpretation is not supported by the plain language of the statute . . . . Congress could have drafted the statute to say "while thus imprisoned" or "while in that custody" or "during the aforementioned confinement" to specifically tie the clause in question to the antecedent in order to ensure that the first interpretation was followed. Even more simply, Congress could have used "while imprisoned" as it uses "prisoner" earlier in the statute if its intent was to limit the claims subject to the PLRA to those arising from harm accrued only in that limited venue.

Napier, 314 F.3d at 533. The argument is plainly fallacious. That Congress could have drafted a less ambiguous statute does not prove that this statute is unambiguous. Moreover, the panel's reasoning is invalid even on its own terms. Had Congress replaced "while in custody" with any of the panel's proposed substitutions, then that phrase's extension would be fixed by its antecedent, "confined in a jail, prison, or other correctional facility." In that case, however, what the panel calls "the first interpretation" of § 1997e(e), according to which "custody" is meant to refer to "that custody for which the prisoner is in fact currently a prisoner," id., would not be ensured but excluded, since such custody would (normally) not occur during confinement "in a jail, prison, or other correctional facility." Simply put, if Congress intended related but not unrelated arrests to fall within the scope of § 1997e(e), it necessarily would prefer that provision's current language to any of the panel's proposed alternatives.

[5] "Congress is presumed to know the settled legal meaning of the terms it uses in enacted statutes and to use those terms in the settled sense." Napier, 314 F.3d at 532.

[6] Compare, for example, Minnesota v. Murphy, 465 U.S. 420, 430 (1984) (equating custody "for purposes of receiving Miranda protection" with "formal arrest or restraint on freedom of movement") with Justices of Boston Mun. Court v. Lydon, 466 U.S. 294 (1984) (holding that a person released on his own recognizance was "in custody" within the meaning of 28 U.S.C. §§ 2241(c)(3) and 2254(a)); Hensley v. Municipal Court, 411 U.S. 345 (1973) (same); Jones v.Cunningham, 371 U.S. 236 (1963) (holding that a parolee was "in custody" within the meaning

8

notion that Congress should be credited with knowing and applying that meaning is inapposite.

Rather than invoke the plain meaning doctrine where it does not apply, thereby expanding the scope of a statute Congress may have meant to apply more narrowly, this Court should candidly acknowledge that § 1997e(e) as written is open to several different interpretations, only some of which would preclude Napier's lawsuit. It should then apply a different interpretive canon to determine which of those competing interpretations is most plausible. This case is a textbook example of the principle that the meaning of an ambiguous word is known by its companions–the doctrine of noscitur a sociis. Both the Supreme Court and this Court have frequently relied on this commonsense principle to ascertain the meaning of ambiguous statutory provisions "in order to avoid the giving of unintended breadth to the Acts of Congress." Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961). See, e.g., Gutierrez v. Camacho, 528 U.S. 250, 255 (2000); Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995); Clay v. Riverwood Intern Corp., 157 F.3d 1259, 1266 (11th Cir. 1998); City of Delray

---

of 28 U. S. C. §§ 2241); McNally v. Hill, 293 U.S. 131 (1934) (equating custody with incarceration or detention in prison); and Wales v. Whitney, 114 U.S. 564, 571 (1885) (equating custody with "any physical restraint," including "[w]ives restrained by husbands, children withheld from the proper parent or guardian, [and] persons held under arbitrary custody by private individuals").

Beach, FL v. Agriculture Ins. Co., 85 F.3d 1527, 1534 (11th Cir. 1996). The panel neglects to do likewise because it insists that the meaning of § 1997e(e) is clear "without reference to the other parts of the statute." Napier, 314 F.3d at 533. But whether a statutory provision is clear or ambiguous cannot be determined apart from its context. See Brown & Williamson Tobacco Corp., 529 U.S. at 132; Bailey, 516 U.S. at 145; Gardner, 513 U.S. at 118; DBB, Inc., 180 F.3d at 1281. The panel's reliance on the plain meaning doctrine to justify interpreting § 1997e(e) apart from the remaining provisions of 42 U.S.C. 1997e puts the cart before the horse.

In his dissent to the panel's decision, Judge Propst reviewed each of the major provisions of § 1997e and found that, viewed as a whole, they suggest that Congress intended "in custody" in § 1997e(e) to mean at least "prison custody," if not "prison custody related to the present incarceration." Napier, 314 F.3d at 535. I agree with this conclusion, which is only reinforced when § 1997e(e) is read in light of the PLRA's legislative history. There is no evidence that Congress meant the PLRA to restrict lawsuits unrelated to prison conditions. All of the examples of frivolous litigation cited in the record involve prison conditions; none involves custody occurring "outside prison walls," let alone arrests unrelated to a prisoner's current confinement. See 141 Cong. Rec. S7498-01 (daily ed. May 25, 1995)

10

(Statements of Senators Dole and Kyl); 141 Cong. Rec. S14408-01 (daily ed. Sept. 27, 1995) (Statements of Senators Dole, Hatch, Kyl, and Abraham); 141 Cong. Rec. S14754-01 (daily ed. Dec. 4, 1995) (Conference Report on H.R. 2076).[7]

In sum, the Napier panel's expansive interpretation of § 1997e(e) finds little support in the language, structure, or history of the PLRA. By confining itself to examining a particular statutory word in isolation, the panel unjustifiably disregards the "'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall

---

[7] The PLRA was introduced in May 1995 by Senators Dole and Kyl as Senate Resolution 866. In his remarks, Senator Dole made clear that the target of the proposed legislation was frivolous lawsuits involving prison conditions. See 141 Cong. Rec. S7498-01, S7524 (daily ed. May 25, 1995) (Statement of Senator Dole) ("Prisoners have filed lawsuits claiming such grievances as insufficient storage locker space, being prohibited from attending a wedding anniversary party, and yes, being served creamy peanut butter instead of the chunky variety they had ordered."). Senator Kyl reiterated this limitation in his remarks by relying on a Justice Department report on § 1983 litigation entitled "Challenging the Conditions of Prisons and Jails." See 141 Cong. Rec. S7498-01, S7527 (daily ed. May 25, 1995) (Statement of Senator Kyl). Senator Kyl also placed into the record two newspaper editorials describing the rationale of the Dole-Kyl bill. The first, a column published in The Wall Street Journal, referred exclusively to "suits initiated by people claiming a deprivation of their rights while in prison." 141 Cong. Rec. S7498-01, S7527 (daily ed. May 25, 1995) (Article from The Wall Street Journal) (Attached to the Congressional Record) (emphasis added). The second, an editorial appearing in the Tucson Citizen, listed sixteen examples of the type of frivolous prison lawsuit that the Arizona statute on which the Dole-Kyl bill was modeled was intended to deter, all of which involved prison conditions. See 141 Cong. Rec. S7498-01, S7527-28 (daily ed. May 25, 1995) (Article from the Tucson Citizen) (Attached to the Congressional Record).

In Harris, this Court observed that "'[b]ecause Congress enacted [the] PLRA as a rider to an appropriations bill, floor debate is more indicative of legislative intent than it otherwise would be." 216 F.3d at 977 n.5 (quoting Alexander v. Hawk, 159 F.3d 1321, 1325 n.8 (11th Cir. 1998)). We also said that "[t]he statements of Senators Dole and Kyl are due special consideration, because they . . . were the architects of the PLRA." Id.

11

statutory scheme.'" <u>Brown & Williamson Tobacco Corp.</u>, 529 U.S. at 133 (quoting <u>Davis v. Michigan Dept. of Treasury</u>, 489 U.S. 803, 809 (1989)).  Read in context, § 1997e(e) is plainly ambiguous; furthermore, its most plausible interpretation suggests Congress meant "custody" to refer to prison custody.  The PLRA's legislative history reinforces this conclusion, casting further doubt on the panel's dubious interpretation.

## II. The Panel's Holding Conflicts with This Court's Previous Interpretations of § 1997e(e)

As indicated, the panel's holding that the "plain meaning" of § 1997e(e) precludes equating "custody" with "prison custody" or treating "suffered while in custody" as synonymous with "suffered while incarcerated" or "suffered while confined in a jail, prison, or other correctional facility" conflicts with this Court's previous interpretations of § 1997e(e).  <u>See</u> <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1317 (11th Cir. 2002) (interpreting § 1997e(e) to preclude only lawsuits relating to prison conditions); <u>Harris v. Garner</u>, 216 F.3d 970, 979-80 (11th Cir. 2000) (<u>en banc</u>) (paraphrasing "suffered while in custody" as "suffered while confined"); <u>Harris v. Garner</u>, 190 F.3d 1279, 1284-85 (11th Cir. 1999) (paraphrasing "suffered while in custody" both as "suffered while they were

12

prisoners" and as "suffered while they were incarcerated").  Mitchell in particular appears in direct conflict with Napier, further warranting en banc review.

In Mitchell, a federal prisoner sued cigarette manufacturers in state court on state law claims.  After defendants removed to federal court, the district court dismissed the suit because the prisoner did not allege a physical injury as required by § 1997e(e).  The Eleventh Circuit reversed, holding that "§1997e(e) does not apply to prisoner lawsuits unrelated to prison conditions filed in state court based solely on state law and removed by defendants to federal court based on diversity jurisdiction."  Mitchell, 294 F.3d at 1312.  By its very language, this holding does not extend to all state law-claims removed from state court on the basis of diversity jurisdiction, but only to such claims that are "unrelated to prison conditions."  Id.  The Court made the importance of this qualification quite clear:

> Mitchell raises several challenges to the district court's application of § 1997e(e) to this matter. The only contention that is dispositive, however, is his argument that § 1997e(e) does not apply to actions that were removed from state court.  We agree, insofar as the action filed in state court by Mitchell solely alleged state-law claims unrelated to prison conditions.

Id. at 1315 (emphasis added).

After Mitchell, a defendant sued in state court on state law claims related to prison conditions who removes to federal court is not automatically precluded from moving to dismiss.  For example, a government contractor responsible for

13

providing prisoner meals who is sued for mental injury allegedly caused by serving tasteless or rotten food is not necessarily barred by <u>Mitchell</u> from removing to federal court and moving to dismiss, since the alleged injury relates to prison conditions. Hence the qualification "unrelated to prison conditions," which <u>Mitchell</u> uses on three separate occasions, <u>see</u> <u>id.</u> at 1312, 1315, 1317, is properly considered part of that case's holding, which does in turn conflict with <u>Napier</u>.

### III. The Panel's Holding Has Troubling Implications That Reach Far Beyond the Specific Facts of This Case

In <u>Jones v. Cunningham</u>, 371 U.S. 236 (1963), the Supreme Court held that a parolee was in custody within the meaning of 28 U.S.C. §§ 2241, a provision of the federal habeas corpus statute. Likewise, in <u>Hensley v. Municipal Court</u>, 411 U.S. 345 (1973), the Supreme Court held that a person released on his own recognizance was in custody within the meaning of 28 U.S.C. §§ 2241(c)(3) and 2254(a). <u>See also</u> <u>Justices of Boston Mun. Court v. Lydon</u>, 466 U.S. 294 (1984). Hence, as we observed in <u>Duvallon v. Florida</u>, 691 F.2d 483 (11th Cir. 1982), "[i]n the context of habeas proceedings, the 'in custody' requirement may also be met where a petitioner is on probation, parole, or bail." <u>Id.</u> at 485 (citing <u>Hensley</u>, 411 U.S. at 349).

14

As a result of these decisions, the Napier panel's already expansive interpretation of § 1997e(e) has troubling implications that reach far beyond the narrow confines of this case. In particular, as Judge Propst warns in his dissenting opinion, the panel's holding implies that prisoners could be precluded from enforcing violations of their civil rights that occurred while they were released on probation, parole, or bail. For example, a prisoner would be unable to sue her employer in federal court for mental injury associated with sexual harassment or racial discrimination, if the alleged injury occurred while she was "in custody" by virtue of an unexpired term of probation or parole, or while she was released on bail. Napier, 314 F.3d at 536 (Propst, J., dissenting).

This is just one of many such examples. If the panel is correct, then prisoners could be prevented from pursuing an indefinite number of legal claims, against both public and private actors, having absolutely nothing to do with the conditions of their current incarceration. For example, they would be precluded from seeking recovery for mental injury stemming from humiliating, torturous, or otherwise illegal pre-detention searches and interrogations, as well as from, inter alia, false imprisonment, defamation, invasion of privacy, intentional infliction of emotional distress, malicious prosecution, breach of contract, and many similar claims. I do not believe Congress intended to negate such rights. "[I]f Congress

15

had intended this one provision at § 1997e(e)" to have these profound effects, "it would have clearly said so." Id. at 537, n.6 (Propst, J., dissenting).

## IV. This Issue is Exceptionally Important and Warrants En Banc Review

According to Rule 35 of the Federal Rules of Appellate Procedure, en banc review is warranted if such a hearing "is necessary to secure or maintain uniformity of the court's decisions" or "involves a question of exceptional importance." F.R.A.P. 35. Eleventh Circuit Rule 35-3, our companion to F.R.A.P. 35, likewise describes en banc consideration as a procedure intended to alert the entire court to "a precedent-setting error of exceptional importance" or "a panel opinion that is allegedly in direct conflict with precedent of the Supreme Court or of this circuit." 11th Cir. R. 35-3. In my judgment, Napier involves exactly the type of errors these rules are intended to address.

For the forgoing reasons, I respectfully dissent from the Court's denial of rehearing en banc in this case.