[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 24, 2006
THOMAS K. KAHN
CLERK

No. 06-10777
Non-Argument Calendar

_____

D. C. Docket No. 05-00199-CV-5-RH-WCS

ALLEN L. PENOYER,

Plaintiff-Appellant,

versus

DEBRA D. BRIGGS,
MIKE HAMM,
MONICA DAVID,
FREDERICK B. DUMPHY,
TENA M. PATE, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(November 24, 2006)**

Before ANDERSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Allen L. Penoyer, a Florida inmate, appeals the district court's order dismissing his civil rights complaint under 42 U.S.C. § 1983. In his complaint, Penoyer named seven individuals as defendants, including three Florida Parole Commission ("the Commission") members, three Commission employees, and the Secretary of the Florida Department of Corrections. Penoyer alleged, among other things, that the Commission violated his due process rights, as well as Florida's government in the sunshine law, Fla. Stat. § 286.011 (2001), and that changes to Florida's parole laws violated the Ex Post Facto clause of the United States Constitution. The district court, finding that Penoyer "seem[ed] to acknowledge that he knew more than four years before filing this action that the Florida schedule for parole consideration had changed," determined that Penoyer's complaint was untimely.

On appeal, Penoyer argues that the dismissal of his complaint, as amended, was improper. Specifically, Penoyer reiterates that the Commission violated his due process rights as well as state law. Further, with regard to his ex post facto claim, Penoyer states that "a copy of [the] hearing examiner[']s written report was not furnished to petitioner for years," and that "[w]hen [he] finally did receive the written reports from 1999 and 2004 [on or about the] first part of 2005, he began to prepare [his] complaint." He alleges that "without [those] documents it [was]

impossible to determine if an issue exist[ed]." On this basis, Penoyer agues that if the defendants had "properly and timely provided [him] with a copy of [the documents], he would have been able to timely file [his § 1983 complaint]." Because this action was dismissed sua sponte under 28 U.S.C. § 1915(e)(2)(B) prior to serving the defendants, there is no brief from the appellees.

I.

A district court's sua sponte dismissal for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is reviewed de novo, using the same standards that govern Fed.R.Civ.P. 12(b)(6) dismissals. Mitchell v. Farcass, 112 F.3d 1483, 1489-90 (11th Cir. 1997). Under that standard, we "view[] the allegations in the complaint as true." Id. at 1490. Further, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Marsh v. Butler County, Ala., 268 F.3d 1014, 1022-23 (11th Cir. 2001) (en banc). A complaint is also subject to dismissal when its allegations—on their face—show that an affirmative defense, such as the statute of limitation, bars recovery on the claim. See id. at 1022. We review de novo a district court's ruling concerning the applicable statute of limitations and the tolling of the limitations period. United States v. Carrell, 252 F.3d 1193, 1198 (11th Cir. 2001).

"A district court's sua sponte dismissal for frivolity under § 1915(e)(2)(B)(i) is reviewed for abuse of discretion." Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). Under this provision, "an action is frivolous if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002), cert. denied, 540 U.S. 1112 (2004).

"Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Hughes, 350 at 1160.

II.

Upon review of Penoyer's brief and the record, we conclude that the district court did not err when it implicitly denied Penoyer's due process claim in its order dismissing the case, and likewise declined to exercise supplemental jurisdiction over his state-law arguments.

It is well established in this Circuit that "there is no constitutional right to parole in Florida." Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir. 1986). Therefore, the parole process in Florida is not protected by the due process clause. Moreover, to the extent that Penoyer made an argument under Florida's government in the sunshine act as part of his due process claim, it is meritless. To the extent that Penoyer's arguments in this regard did not otherwise implicate a federal right, they were not proper issues for a § 1983 complaint. Griffin v. City of

4

Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). Finally, even if the court could have exercised supplemental jurisdiction over a Florida state-law claim, because it dismissed all the federal issues that gave it original jurisdiction, and, because we find that such dismissal was appropriate, the district court correctly dismissed this claim as well. 28 U.S.C. § 1367(c)(3). For these reasons, the district court did not err in dismissing both of these claims.

III.

Addressing first the district court's timeliness findings, we note that the length of the limitations period governing a § 1983 action is dictated by state law. Wilson v. Garcia, 471 U.S. 261, 270-275, 105 S.Ct.1938, 1943-1947, 85 L.Ed.2d 254 (1985). Accordingly, in Florida, the state's four-year residual statute of limitations applies. City of Hialeah v. Rojas, 311 F.3d 1096, 1102 n.2 (11th Cir. 2002); Fla. Stat. 95.11(3)(p).

Nevertheless, the time of accrual of the cause of action is governed by federal law. Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). "Generally, the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id. (quotation omitted). Specifically, a plaintiff "must know or have reason to know that [he was] injured, and must be aware or

5

should be aware of who inflicted the injury." Rozar v. Mullis, 85 F.3d 556, 562 (11th Cir. 1996). Stated differently, once Penoyer "knew, or should have known, all of the facts necessary to pursue a cause of action," the statute of limitations began to run. Lovett, 327 F.3d at 1182. Analyzing this issue, "a court [must] first . . . identify the alleged injuries, and then . . . determine when [the] plaintiff[] could have sued for them." Rozar, 85 F.3d at 562.

"To dismiss a prisoner's complaint as time-barred prior to service, it must 'appear beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar.'" Hughes, 350 F.3d at 1163 (reversing in part to allow plaintiff to amend his complaint if he could "plead facts that would support a finding that the statute of limitations [had] been tolled").

"The interests of justice, however, can weigh in favor of allowing a plaintiff to assert untimely claims if circumstances beyond the plaintiff's control prevented timely filing." Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir. 2006). "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999). Equitable tolling is only proper on the court's "finding [that] an inequitable event . . . prevented plaintiff's timely action," and the plaintiff bears the burden of proof.

6

Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993). Nevertheless, "[equitable] tolling is an extraordinary remedy." Id.

Addressing the merits of Penoyer's claim, we note that the Fx Post Facto clause of the United States Constitution prohibits the states from making laws "which, by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249, 120 S.Ct. 1362, 1367 142 L.Ed.2d 246 (2000). While "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept[,] not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." Id. at 250, 120 S.Ct. at 1367. The determinative question is "whether retroactive application of the change in [the state] law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Id. (quoting California Dept. of Corrections v. Morales, 514 U.S. 499, 509, 115 S.Ct. 1597, 1603, 131 L.Ed.2d 588 (1995) (holding that a California law did not violate the Ex Post Facto clause because it created only an insignificant risk that covered inmates would suffer increased punishment)). Finally, the plaintiff bears the burden of showing that the law "create[s] a significant risk of increasing his punishment." Id. at 255, 120 S.Ct. at 1370.

Although it is not entirely clear which particular law(s) are at issue here, we have reviewed Florida's changing parole laws before. In 1985, for example, we held that laws adopted two years earlier "in an effort to eliminate the arbitrariness and capriciousness that had crept into the old system," did not violate the Ex Post Facto clause because they did nothing to change the fact that "the ultimate discretion on parole remained with the [C]ommission," and the changes to the law only affected "the manner in which it exercise[d] this power." Johnson v. Wainwright, 772 F.2d 826, 827 (11th Cir. 1985); see also Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 933 (11th Cir. 1986) (per curiam) (changes to parole laws adopted in 1978 did not affect the Commission's complete discretion and did not violate the Ex Post Facto clause as to inmate convicted in 1974).

In 1997, Florida amended its statutes further. Prior to 1997, Florida inmates were interviewed for a review of their PPRD every two years. Fla. Stat. § 947.174 (2001); see also Tuff v. State, 732 So.2d 461, 462 n.1 (Fla. Dist. Ct. App. 1999) (noting that from 1970 until 1997 subsequent parole interviews were conducted every two years). The statute enacted that year is still in force. Section 947.174 now directs, in relevant part, that, while the default frequency of such interviews is two years,

> [f]or any inmate convicted of murder, attempted murder, sexual
> battery, attempted sexual battery, or who has been sentenced to a

8

> 25-year minimum mandatory sentence . . . , [subsequent interviews to review the inmate's PPRD] shall take place once within 5 years after the initial interview and once every 5 years thereafter if the [C]ommission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing.

Fla. Stat. § 947.174(1)(a)-(b) (2001).

For purposes of this appeal, we assume arguendo that the Commission repeatedly refused to give Penoyer certain documents he requested concerning his eligibility for parole, and as a result, he did not know all he needed to know to file a § 1983 claim until some point after the state law governing frequency of parole hearings had changed. However, as discussed below, we can affirm the district court's order under § 1915(e)(2)(B)(i). See Parks v. City of Warner Robins, Ga., 43 F.3d 609, 613 (11th Cir. 1995) (holding we can "affirm the district court's decision on any adequate ground, even if it is other than the one on which the court actually relied").

We have not addressed whether the current version of § 947.174 violates the Ex Post Facto clause. However, the Supreme Court has offered guidance on the issue. In Morales, the Supreme Court approvingly analyzed a California parole statute that allowed California's parole board "to defer subsequent [parole] hearings for up to three years if the prisoner ha[d] been convicted of more than one offense which involve[d] the taking of a life and if the [b]oard [found] that it [was]

9

not reasonable to expect that parole would be granted at a hearing during the following years and state[d] the bases for the finding." Morales, 514 U.S. at 503, 115 S.Ct. at 1600. The Supreme Court found that this law did not violate the Ex Post Facto clause because: (1) it applied to a narrow class of prisoners "for whom the likelihood of release on parole is quite remote"; (2) it only affected subsequent hearings, meaning that it never applied until findings of an initial hearing had been made; (3) it required California's board to make specific findings justifying the deferral; and (4) it required that the deferral be put in writing. Id. at 509-11, 115 S.Ct. at 1603-04. Further, the Supreme Court noted that the statute established annual hearings as a default. Id. at 511-12, 115 S.Ct. at 1604.

The Supreme Court concluded in Morales that because of the "particularized findings" the law required, combined with the board's "broad discretion," the class of prisoners that the statute affected could not "reasonably expect that their prospects for early release on parole would be enhanced by the opportunity of annual hearings." Id. at 512, 115 S.Ct. at 1604. Thus, rather than increase the prisoner's punishment, the statute merely allowed California's parole board to "avoid the futility of going through the motions of reannouncing its denial of parole suitability on a yearly basis." Id. Accordingly, holding that the statute created "only the most speculative and attenuated risk of increasing the measure of

10

punishment attached to the covered crimes," the Supreme Court found that it did not violate the Ex Post Facto clause. Id. at 514, 115 S.Ct. at 1605.

Section 947.174 bears marked similarities to the California statute at issue in Morales. First, it applies only to a narrow class of prisoners, though it is slightly broader than California's. Second, it only affects the timing of subsequent parole hearings, not the initial hearing. Third, similar to the California law, Florida's statute requires the specific finding that "it is not reasonable to expect that parole will be granted at a hearing during the following [five] years." Fla. Stat. § 947.174(1)(b). Finally, it requires the Commission to support its decision by explaining it in writing. Based on the foregoing, as in Morales, it appears that this statute was crafted to reduce the "futile" work of frequently "reannouncing" the denial of parole to a class of prisoners who, in the Commission's broad discretion, were very unlikely to warrant it. Accordingly, Penoyer has not alleged facts showing that changes in the law "create[d] a significant risk" of increasing the length of his imprisonment, and, as in Morales, we conclude that he failed to state a cognizable Ex Post Facto clause violation as a matter of law. Accord Tuff v. State, 732 So.2d 461, 466 (Fla. Dist. Ct. App. 1999).

Accordingly, Penoyer's ex post facto claim lacks arguable merit and the district court properly dismissed his complaint as frivolous under

11

§ 1915(e)(2)(B)(i).  <u>Napier</u>, 314 F.3d at 531.  This being so, and as all of Penoyer's other claims similarly lack merit, we affirm the district court's dismissal of his complaint.

**AFFIRMED**[1]

---

[1]  Penoyer's request for oral argument is denied.