[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10215
Non-Argument Calendar
_____

D.C. Docket No. 9:12-cv-80756-KLR


REGINALD WILKINSON,

Plaintiff-Appellant,

versus

THE GEO GROUP, INC.,
OFFICER V. GREER,
OFFICER N. MCPHERSON,
CAPT. R. JACKSON,
CAPT. B. PERRY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 7, 2015)

Before WILLIAM PRYOR, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Reginald Wilkinson, a Florida prisoner and adherent of the Santeria religion, appeals a judgment against his complaint that a prison contractor, prison officers, and prison employees violated his rights under the First and Fourteenth Amendments. Wilkinson alleged that the defendants deprived him of a religious artifact and destroyed a religious shrine he maintained in his prison cell. We affirm.

## I. BACKGROUND

Wilkinson is an inmate at the South Bay Correctional Institute, operated by The GEO Group, Inc., in South Bay, Florida. In May 2010, Officer V. Greer and Officer N. McPherson conducted a search of Wilkinson's cell. The officers confiscated Wilkinson's "Eleggua," a Santeria religious artifact, and discarded it in a garbage bag. When he reentered his cell, Wilkinson discovered that his religious shrine had been destroyed; cups of water for his ancestors were overturned; bowls of food were emptied onto the floor; religious beads were strewn about; and his candles had been crushed.

Wilkinson filed an informal grievance that was denied because the Eleggua had a "nail" protruding from the "forehead area" and because inmates were not "allowed to have religious shrines in their cells." Wilkinson filed a second informal

2

grievance, which the chief of security reviewed. He responded that Wilkinson's shrine should not have been destroyed, that he was allowed to have a religious shrine in his cell, and that the officers took the Eleggua because they were not "knowledgeable of the fact that [he was] authorized to have" the item in his possession. The chief of security also offered to reimburse Wilkinson for his loss so that he could replace the items. Wilkinson filed another grievance to request further investigation into the incident. The prison denied this grievance because a decision had already been rendered.

Wilkinson filed a complaint in the district court against The GEO Group and twelve individual employees at the prison. In addition to his allegations regarding the destruction of his shrine, Wilkinson alleged that prison employees retaliated against him for filing grievances by refusing to send legal mail, overcharging him for postage, and for demanding he turn over his gym shorts. Wilkinson also alleged that his shorts were returned to him and that his postage costs were eventually reimbursed.

A magistrate judge reviewed Wilkinson's *in forma pauperis* complaint to determine whether the complaint stated valid claims. *See* 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted."). The magistrate judge concluded that the claims against Greer,

McPherson, and GEO for violations of Wilkinson's rights under the First and Fourteenth Amendments, as well as Wilkinson's claims under state tort law against Greer and McPherson, were cognizable. The magistrate judge recommended that the remainder of his claims be dismissed, and the district court adopted the report and recommendation of the magistrate judge.

Wilkinson moved to disqualify the district judge and magistrate judge for impermissible bias, 28 U.S.C. § 455. The district court denied the motion. Greer, McPherson, and GEO later moved for summary judgment, and the district court granted their motion.

## II. STANDARDS OF REVIEW

We review *de novo* a summary judgment, and we view the facts in the light most favorable to the non-moving party. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1581 (11th Cir. 1995). We also review *de novo* a dismissal for failure to state a claim under section 1915(e). *Bilal v. Driver*, 251 F.3d 1346, 1348 (11th Cir. 2001). We review for abuse of discretion a dismissal of an *in forma pauperis* action as frivolous under section 1915(e). *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that Wilkinson has failed to establish any constitutional violations arising out of the confiscation of his

Eleggua or the destruction of his shrine. Second, we explain that the remainder of Wilkinson's contentions are meritless.

*A. Wilkinson Has Failed to Establish That the Officers Violated His Rights Under the Free Exercise Clause.*

Wilkinson argues that Greer, McPherson, and GEO violated his constitutional right to the free exercise of religion when the officers confiscated his Eleggua and destroyed his shrine. U.S. Const. Amend. I. To establish a violation of his right to free exercise, Wilkinson must first establish that a state actor imposed a "substantial burden" on his practice of religion. *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 2 F.3d 1514, 1549 (11th Cir. 1993). The state actor can then defend its conduct on the ground that it applied a "neutral law of general applicability," *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879, 110 S. Ct. 1595, 1600 (1990). In the prison context, the state actor can also defend the action if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987).

To prove that his religious exercise was substantially burdened, Wilkinson must present evidence that he was coerced to perform conduct that his religion forbids or prevented from performing conduct that his religion requires. *Cf. Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) (concluding that, under the Religious Land Use and Institutionalized Persons Act, "a 'substantial burden' must place more than an inconvenience on religious

5

exercise; a 'substantial burden' is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."). We draw this standard from our precedents interpreting the Religious Freedom Restoration Act, *see, e.g.*, *Cheffer v. Reno*, 55 F.3d 1517, 1522 (11th Cir. 1995), and the Religious Land Use and Institutionalized Persons Act, *see, e.g.*, *Midrash*, 366 F.3d at 1227. Although those Acts are not coterminous with the Free Exercise Clause, *see Holt v. Hobbs*, — U.S. —, —, 135 S. Ct. 853, 859–60 (2015) (explaining that the Acts were passed to provide "greater protection" for religious liberty than provided by the First Amendment), the Acts were passed to reinstitute the standard of strict scrutiny in religious liberty cases, *see id.*, and our decisions regarding "substantial burdens" draw on decisions of the Supreme Court that pre-date *Smith*. *See Midrash*, 366 F.3d at 1226–27 (analyzing pre-*Smith* decisions of the Supreme Court that define "substantial burden"); *see also Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18, 101 S. Ct. 1425, 1432 (1981) ("Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists."). At the very least, "a 'substantial burden' must place more than an inconvenience on religious exercise." *Midrash*, 366 F.3d at 1227 (11th Cir. 2004).

Wilkinson failed to establish that the destruction of his shrine placed a "substantial burden" on his religious practice. The chief of security of the prison explained to Wilkinson that his shrine should not have been destroyed, that he was entitled to maintain a shrine, and that the prison would reimburse him for the cost of replacing it. At most, Wilkinson has established that he was temporarily deprived of a particular religious devotion. Wilkinson stated that he was "prevented from practicing the Santeria religion because [he] was not able to complete the ritual [he] made before [his] religious shrine was destroyed." But he does not assert that he was required to perform this particular ritual at any particular time or that he could not perform the ritual after his shrine was replaced. Without more, we cannot hold that the destruction of the shrine was a "substantial burden" on Wilkinson's religious practice.

Moreover, even if we assume that the Eleggua was necessary to Wilkinson's religious practice, the officers had a legitimate penological interest in confiscating the Eleggua. Although Wilkinson argues that there was no "nail" in the head of the Eleggua, he admits in his affidavit that there is "always a tiny blade" in an Eleggua. Because there is no genuine dispute that the Eleggua contained a sharp point, the legitimate interest of prison safety outweighs the need for the Eleggua in religious practice. Even "[s]trict scrutiny does not preclude the ability of prison

7

officials to address the compelling interest in prison safety," *Johnson v. California*, 543 U.S. 499, 514, 125 S. Ct. 1141, 1151 (2005).

Wilkinson failed to establish that Greer and McPherson violated his constitutional rights, and in the absence of an underlying constitutional violation, neither GEO nor any supervisors are liable to Wilkinson. The district court did not err.

### B. The Remainder of Wilkinson's Arguments Are Meritless.

Wilkinson makes four other arguments, but they are meritless. We address each argument in turn.

First, Wilkinson argues that when the officers confiscated his Eleggua and destroyed his shrine, they, their supervisors, and GEO violated his right to equal protection under the Fourteenth Amendment. To establish a violation of his right to equal protection, Wilkinson "must prove that the decisionmakers in his case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987) (emphasis omitted). Though Wilkinson averred that Greer and McPherson destroyed his shrine and confiscated his Eleggua, he provided no evidence that they did so with intent to discriminate against his Santeria faith.

Second, Wilkinson argues that the district court abused its discretion when it dismissed his claims against the officers and employees who allegedly seized his gym shorts and refused to pay $2.38 in postage for his legal mail, in retaliation for

8

Wilkinson's filing of grievances. But the district court did not abuse its discretion when it decided that the alleged retaliation was too minimal to meet the standard for retaliation claims, especially where the gym shorts and money were returned to Wilkinson. *See, e.g.*, *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (explaining that an inmate must establish that there was an "adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech") (alteration in original).

Third, Wilkinson argues that the district court erred when it dismissed his claims of a denial of access to the courts. But for that claim, an inmate must allege that he was prejudiced. *Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir. 1991) (explaining that where the "alleged deprivations are of a minor and short-lived nature and do not implicate general policies . . . [we] require an inmate to articulate facts indicating some prejudice such as being unable to do timely research on a legal problem or being procedurally or substantively disadvantaged in the prosecution of a cause of action"). At most, Wilkinson's complaint alleges that his mail was delayed. Without more, Wilkinson has failed to state a claim that he was denied access to the courts.

Fourth, Wilkinson argues that the district court abused its discretion when it denied his motion for disqualification, 28 U.S.C. §§ 144, 455, but he failed to allege any personal bias or prejudice on the part of the district judge or magistrate

9

judge. He instead argued that the district court had erroneously ruled against him.

Outside of the rarest of circumstances, judicial rulings alone are insufficient to

constitute bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct.

1147, 1157 (1994).

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of the defendants.